Anderson vs. The State.

*By the Court.* — Judgment affirmed.

---

## ANDERSON vs. THE STATE.

CRIMINAL LAW: *What degree of proof will warrant a conviction.*

1. One accused of crime is entitled to have the evidence against him closely and carefully scrutinized, and can be lawfully convicted only where *after such scrutiny*, the jury can say, upon their oaths, that the evidence leaves in their minds no reasonable doubt of his guilt.

2. On the trial of a criminal information, the jury were thus instructed: "In order to convict, the evidence should be such as to convince you as reasonable men that the charge is true. If, as reasonable men, *guided by that prudence and reason which govern you in the ordinary conduct of your affairs*, you have a doubt of the defendant's guilt, you should acquit." *Held*, that this language might, without violence, have been understood by the jury to mean that if, in their ordinary affairs, they would, upon the evidence before them, adopt and act upon the hypothesis that the accused was guilty of the crime charged, they should convict him; and that, so understood, the instruction would have exposed the accused to conviction on insufficient evidence; and it was therefore erroneous.

---

[*] All these cases will be found in the present volume.

Anderson vs. The State.

ERROR to the Circuit Court for *Polk* County.

The writ of error in this case was sued out to reverse a judgment upon conviction of rape. The case is stated in the opinion.

For the plaintiff in error, a brief was filed signed by *H. C. Baker, John C. Spooner* and *John E. Glover*, and the cause was argued orally by *Mr. Spooner.* They contended, among other things, 1. That there was error in that the accused was deprived of the right of *being present at the whole trial;* it appearing that when the cause was reached, he was confined in the county jail; that the clerk, by order of the court, supposing the prisoner to be in court, had drawn three jurors before he was brought in by the sheriff; that said three jurors were then directed by the court to stand up, and their names were called in the presence of the prisoner, and he was informed that they had already been drawn, and the drawing proceeded. R. S., ch. 179, sec. 7; *Hill v. The State,* 17 Wis. (V. & B.'s notes), 699, and authorities there cited. 2. That there was also error in this, that the district attorney, in exercising the right of peremptory challenge in behalf of the state, passed the list three times to the defendant without striking any name from said list, but when it was presented to him for the fourth time, struck *one of the jurymen belonging to the original panel,* the defendant objecting, and his objection being overruled, and there being no pretense that this was done in consequence of an objection being discovered to the juror so struck, which was not fully known when the list was first passed. *State v. Cameron,* 2 Chand., 178; Proffatt on Jury Trials, § 199, citing *Hotz v. Hotz,* 2 Ashmead, 245. 3. That the court erred in giving the instruction referred to in the opinion of this court. 3 Greenl. Ev., § 29, note 2, and § 30.

*The Attorney General,* for the state, argued, among other things, that the act of the court in causing the three jurors previously drawn to stand up, and their names to be called, in the presence of the prisoner, and in informing him that they

had been drawn, were equivalent to a new drawing; and that the failure of the prisoner to object at the time was a waiver. Tay. Stats., 1334, § 38; 1 Archb. Cr. Pr., 628; *State v. Hill*, 17 Wis. (V. & B.'s note), 699. 2. That there was no error in allowing the district attorney's peremptory challenge; that the right of the state as to peremptory challenges is given by the same section of the statute as that of the accused, and is to be interpreted by the same rules (Tay. Stats., 1940, § 3); and that it is an arbitrary right, to be exercised with full freedom and *at any time before the jury are sworn*. *Jones v. Vanzandt*, 2 McLean, 611; *Hendrick's Case*, 5 Leigh, 708; *Morris v. The State*, 7 Blackf., 607; *Beauchamp v. The State*, 6 id., 299, 307; *Comm. v. Knapp*, 10 Pick., 480, note; *O'Connor v. The State*, 9 Fla., 215; *Hooker v. The State*, 4 Ohio, 350; 23 Iowa, 9; *Lamb v. The State*, 36 Wis., 424. 3. That there was no error in the instructions given.

LYON, J. The plaintiff in error was tried upon an information charging him with the crime of rape, and was convicted thereof, and sentenced to imprisonment for a term of years in the state prison. The judgment comes here for review on a writ of error.

On the trial, the judge instructed the jury (among other things) as follows: "In order to convict, the evidence should be such as to convince you as reasonable men that the charge in the information is true. If, as reasonable men, *guided by that prudence and reason which govern you in the ordinary conduct of your affairs*, you have a doubt of the defendant's guilt, you should acquit."

One of the errors assigned is the giving of the above instruction.

Without doing any violence to the language of the above instruction, we think the jury might well have understood from it, that if, in their ordinary affairs, they would, on the evidence before them, adopt and act upon the hypothesis that

the plaintiff in error was guilty of the crime charged, they should convict him.   It may be the learned circuit judge did not intend to lay down that proposition; yet if the instruction might reasonably have been so understood by the jury, the effect upon the judgment is the same as though the proposition had been stated in unmistakable language.

It seems to us that the proposition is unsound, and that the instruction exposed the plaintiff in error to conviction on insufficient evidence.  The truth is, that in their ordinary affairs men accept and are entirely satisfied with less conclusive evidence of the existence of the facts which control their action, than they would accept or be satisfied with in affairs of greater importance.   The more important the matter, the closer will be the scrutiny of the evidence; and such scrutiny may develop reasonable doubts of the existence of the facts, which otherwise would not have arisen.

To illustrate, suppose a person cognizant of the evidence in this case were determining whether he would employ the plaintiff in error as his servant.   If the latter is innocent of the crime charged, such person would so employ him; if guilty, he would not.   This is an ordinary affair, which does not call for any very close or careful scrutiny of evidence; and the positive testimony of the prosecutrix that the plaintiff in error ravished her, might be satisfactory proof of his guilt. But make it the duty of such person to scan the evidence with the greatest caution and care, and he might discover in it that which would raise very grave doubts in his mind of the guilt of the accused.

A person accused of crime is entitled to have the evidence against him closely and carefully considered, and can only be lawfully convicted when, after such scrutiny, the jury can say upon their oaths that the evidence leaves in their minds no reasonable doubt of the guilt of the accused.   The absence of doubt of guilt when the measure and limit of the scrutiny is that which reasonable men would exercise in the ordinary

affairs of life, is not sufficient; for it does not necessarily result therefrom that the evidence properly considered would leave no such doubt.

This, therefore, is the infirmity of the instruction.  It gave a wrong basis or standpoint from which the jury were to determine the presence or absence of a reasonable doubt, and exposed the plaintiff in error to a conviction on insufficient evidence.   If the learned circuit judge desired to make use of any such analogy, he should have told the jury that it was their duty to scrutinize the evidence with the utmost caution and care, bringing to that duty the reason and prudence which they would exercise in the most important affairs of life, in fact all the judgment, caution and discrimination they possessed; and then, unless they could say from that standpoint that the evidence failed to impress their minds with any reasonable doubt of guilt, they should acquit the accused.   Had such an instruction been given and observed, a verdict of acquittal might have been rendered; for a careful scrutiny of the whole testimony might well have left a reasonable doubt whether the element of force entered into the transaction upon which the information is predicated, if there was any such transaction.

The foregoing views are sustained by authority.   In the recent case of *State v. Rover*, decided by the supreme court of Nevada, an abstract of which will be found in the Law and Equity Reporter, vol. 3, No. 14 (p. 422), the court, on a careful and extended review of the authorities, held the following instruction erroneous: " By reasonable doubt is meant such a doubt as would govern or control you in your business transactions or usual pursuits of life."   The court, by HAWLEY, C. J., says that, " to ascertain the truth of any given proposition with reference to the ordinary and usual business transactions of life, men are governed and controlled, as juries are in deciding civil cases, by a preponderance of evidence.   Men frequently act 'in the business transactions or usual pursuits

of life' without any firm or settled conviction that the conclusion upon which they act is correct.   *   *   *   The preponderance or weight of testimony upon which men would ordinarily be willing to act in 'their business transactions or in the usual pursuits of life,' is not the rule that should govern jurors in deciding questions that involve the life or liberty of an individual." This case expressly overrules that of *State v. Millain*, 3 Nev., 409, in which, without argument or citation of authority, the same court in 1867 upheld a similar instruction in a criminal case.

On similar reasoning it was held in *Jane v. The Commonwealth*, 2 Met. (Ky.), 30, that the following instruction was erroneous: "The jury should weigh and consider all the facts and circumstances proven to their satisfaction, in connection and combination, and should hold them and pass judgment on them in that condition; and if the conclusion from the facts and circumstances so proven to their satisfaction be, that there is that *degree of certainty* in the case that they would act on it in their own grave and important concerns, that is the degree of certainty which the law requires, and which will justify and warrant them in returning a verdict of guilty."

We are aware that the language of the instruction in the present case is not the same as in the Nevada and Kentucky cases, and perhaps a close analysis of it might disclose a different meaning. But it was addressed to men who had no opportunity for close analysis, and who, as already observed, might well have understood it as asserting the rule of the instructions in those cases.

Several other questions of importance were argued at the bar, but we feel ourselves relieved from the duty of passing upon them.

Because of such erroneous instruction, the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.* — So ordered.