John Larkin v. The Mitchell & Rowland Lumber Co.

*Action for merchandise forwarded in excess of order and destroyed by accident.*

Where dealings between parties consist of separate and distinct transactions, they cannot be referred to as establishing a usage that will govern another independent transaction between them, especially if the latter was carried on under express terms in writing.

Error will not lie on rulings not excepted to, or if excepted to, on which error was not assigned.

Where a motion to strike out testimony is so broad as to cover lawful evidence also, it is properly denied.

It is not material error to strike out evidence if the court afterwards correctly directs a verdict.

A lumber dealer gave an order for a lot of shingles and a larger quantity was forwarded to him than the amount called for. He received and held the excess subject to the consignor's order, advanced the freight charges and notified the consignor, and immediately afterwards they were destroyed by fire without his fault. *Held* that assumpsit would not lie for their value.

Where several car-loads of shingles of the same quality were forwarded to a dealer in excess of his order, and he took a quantity out of one of the cars to fill the order, it is immaterial from what car he took the necessary quantity.

Where an order for merchandise was largely exceeded, and the consignee received the excess to be sold or held subject to the consignor's order, and advanced the freight in good faith and for the consignor's benefit, he could recover the amount so advanced in assumpsit against the consignor as for money paid to his use.

Error to Saginaw. Submitted Oct. 30. Decided Nov. 29.

Assumpsit. Plaintiff brings error.

*Camp & Brooks* for plaintiff in error.

*Benton Hanchett* for defendant in error. . Where merchandise worth more than $50 is consigned without a written order for it, acceptance is necessary to transfer title, *Alderton v. Buchoz,* 3 Mich., 322; the consignee's

silence is not evidence of acceptance, 1 Pars. Cont. (6th ed.), 484; *Felthouse v. Brindley,* L. J. Ch., 204; one who has paid for the benefit of another, money which the latter was legally bound to pay, and has done so for a reasonable cause and not officiously, can recover the amount in assumpsit against the person for whose benefit it was paid, *Bailey v. Bussing,* 28 Conn., 462; *Jefferys v. Gurr,* 2 B. & Ad., 833; *Pownal v. Ferrand,* 6 B. & C., 438; *Exall v. Partridge,* 8 Term, 309; *Goodridge v. Lord,* 10 Mass., 483; *Robinson v. Green,* 3 Met., 159; *Graham v. Dunnigan,* 6 Duer, 630; *Emery v. Hobson,* 62 Me., 594; *Nichols v. Bucknam,* 117 Mass., 488; *Young v. Dobyns,* 12 B. Mon., 7; *Brittain v. Lloyd,* 14 M. & W., 772.

GRAVES, J. The plaintiff in 1876, and during several years before, was engaged in making lumber and shingles at Midland, and the defendant, an Ohio corporation, was a large dealer and accustomed to buy and sell a great quantity every year, and prior to the transaction out of which the present controversy arose the plaintiff had sold several lots of shingles to the defendant, and so far as appears, the business had been managed with mutual satisfaction.

August 31, 1876, defendant's secretary wrote to plaintiff from Toledo, saying:

"We thought XXX 18-inch at $3.00 here was pretty near bottom, but missed it on the last purchase from you, as they are coming at $2.75, and selling from yards here at corresponding low prices. At what price can you sell us another million or two, and what for a few cars clear butts, 18-inch, and for a few cars best 16-inch? Let us know soon and oblige."

September 2d the plaintiff replied, saying:

"I cannot sell XXX 18-inch for any less than I have sold them to you for, and *will not* contract any amount ahead at that price, as my stock of logs is nearly cut out, and I cannot get logs and make shingles at even the price you have been paying me, $3.00. I will send you a few cars more at $3.00 if *you wish,* and will also send a few cars of clear butts at $1.90 if you wish, but I am not anxious to sell at those prices, as I shall have but few more

to sell this fall, unless prices advance a little. As regards 16-inch, I cannot make them at the prices, and have stopped making them for the present; if you wish ¼ to ½ million best XXX 18-inch *at old* prices, and a few cars of clear butts will send them. Please advise. We load a car for you to-day best 18-inch, *which fills* and *a little* over, the *two million*."

The last sentence had reference to a former transaction.

September 4th the defendant's secretary wrote in reply and said to plaintiff:

"You may send us up to 500 M., or say eight car loads your XXX 18-inch at $3.00 per M. here, and we will meantime look at some of the cheap shingles offered. Send above along promptly."

The car load rated at sixty thousand, and in case of shingles consigned to defendant, the cars were passed by the railroad company into defendant's yard over a side-track connected therewith, in order to be speedily unloaded and not detained, and the defendant advanced the freight charges.

As soon as he received this order of September 4th, the plaintiff commenced shipping, and from the 6th to the 23d of September he sent forward eight car loads. But he did not stop with these.. He dispatched three more—one on the 25th, one on the 26th, and another on the 27th; and on the 28th the defendant received bills of lading through the mail, from which it appeared the plaintiff was exceeding the order given him, and it immediately sent him this telegram: "Ship us no more shingles—see letter;" and on the same day the defendant's secretary wrote to him, saying:

"We received bills to-day of more shingles than were ordered, and telegraphed you not to ship any more, having bo't a quantity of shingles at a much less price, we do not now need any more, and cannot afford to take of you at $3.00 any more than *we bo't*. Enclosed you will find a statement of *500 M.* credited as agreed, at $3.00 and freight charges paid, and Chas. C. Doolittle, cashier, 40,242, on Metropolitan National Bank, N. Y., for 501.25, endorsed to order of William Patrick in full."

The letter covered a statement of account which men-

tioned that one car load of sixty thousand and another of forty thousand were held subject to adjustment. At this time it seems the defendant had taken twenty thousand out of one of the cars in order to make up the maximum quantity specified in the order, and therefore leaving forty thousand of that load unappropriated, and that the final car of the eleven sent had not arrived, or at least was not known to have arrived. After the receipt of the telegram the plaintiff sent no more forward.

He had, however, on the day preceding the writing of this last letter by defendant's secretary, namely, on the 27th, himself written, saying:

"I suppose the last order for shingles *is filled* and *perhaps some over*, but I have not tried to sell to any other parties, and will send along a few cars more unless you should otherwise direct. I have about 12 to 15 M. of good 18-inch, shaved shingles. Shall I put them in a car and send to you, and if so, what will you allow me for them there if all right? Can't you use a few cars of 6-inch clear butts 18-inch at, say $1.90 there?"

On the 29th the last of the eleven car loads reached the yard and defendant took out two loads and piled them with the forty thousand from the broken load in a place by themselves, on one side of the yard. On the 5th of October the railroad company presented their account for freight charges in the customary way and defendant paid it. It included the charge for these shingles, which amounted to $76.75.

October 2d the plaintiff sent a reply to defendant's letter of September 28th. He said:

"Yours with draft received; also your telegram. Am sorry you cannot use any more shingles at the old price, $3.00, for certainly it is as low as I can make them, but hope shingles may do better in time; but it will not make much difference, as I have stopped making only with one machine, about 20 M. per day, and shall not run that only a week or two longer, so I shall not have many to sell. *You* have *ere* this *received* car No. 64 bill, but we did not send car 64; it was loaded in the yard when I received your telegram, so I did not send it, but the invoice had been mailed, and that of course went forward. You say there is one car and 40 M. in another

car yet unsettled for. I think also, there is one car more before this, making 240 M. On these you may send me draft for, deducting what you think is right, and it will be all satisfactory. Hoping the time may come that I can supply you again, and should any thing occur that you can use a few cars more at $3.00 would like to send them to you this fall yet, but I shall not have but a few cars more to sell this fall."

It is admitted that the mention of "240 M." in this letter was a mistake, and that the quantity referred to was 159 or 160 M. only.

A short time after this communication was written at Midland City, namely, on the night of the 10th of October, a fire, originating in some way not ascertained, swept over the defendant's yard, consuming the shingles in controversy, together with a quantity belonging to defendant, and some nine million feet of lumber.

The plaintiff's letter of October 2d had not been answered, and in a week after the fire, that is on October 17th, he addressed defendant as follows:

"Under the circumstances, after your serious losses by fire, I had not expected to say a word about the balance on shingles, but I have to raise $1000 this week without fail. Now, is it possible for you to help me to the amount of those shingles? If you have not the money to spare, send me your paper on 30 or 60 days, and I can use that. Only for my actual necessities would not bother you at this time. Don't you want 500 or 600 M. lath? Will deliver them in your city for $1.65 per 1000 pieces. Lath are A No. 1 article; will warrant them."

To this defendant replied on the 19th as follows:

"We have paid you for all shingles purchased of you. Those you sent in excess of our order we regret to say were burned in our recent fire. We are sorry you should make a loss with ourselves. We do not want to buy lath; have a full stock."

Larkin at length brought assumpsit for the value of the shingles in excess of 500 M. which were destroyed by the fire at defendant's yard, and being 159 M. or 160 M., and defendant gave notice with the general issue that the freight charges of $76.75, with interest, would be set off.

The jury were instructed by the circuit judge that the title to those shingles never passed to the defendant and that the plaintiff was not entitled to recover for them, and on the other hand that defendant was entitled to recover, under the notice of set-off, the freight charges and interest, amounting to $86.17, and a verdict was returned accordingly.   At the trial several exceptions were taken and they are now urged here.

The plaintiff being on the stand his counsel put this question: "During the time you have had deal with defendant, what has been the custom between yourself and it, when it ordered lumber and shingles, of filling the bill exactly as ordered?"   The inquiry was objected to as immaterial, and the plaintiff's counsel then stated in support of the question "that they proposed to show by the witness that the deal between the parties was such that when they sent for a lot of lumber, or a lot of shingles, it was approximately; that a few thousand more or a few thousand less was considered of no account, and paid for what they had."   The objection was, however, sustained.

If this ruling, when made, could have been deemed questionable, the subsequent introduction of the correspondence must have removed all doubt of its correctness. But the objection was plainly tenable when made.

The inquiry and explanation indicated that the previous dealings referred to had consisted of separate and distinct operations, and not of a connected course of dealing, and that the transaction in question was likewise one by itself, with its own constituents and its own outline.   And certainly the former contracts could furnish no criterion to show that in ordering on this occasion eight car loads, or five hundred thousand, the defendant intended that the plaintiff might exceed the express limit by one hundred and sixty thousand.   "There is no principle of law that parties will always make the same terms for their contracts."   *Hinman v. Eakins*, 26 Mich., 80, 82.

The second and third charges of error relate to rulings on questions put to Rowland, the defendant's secretary. As these rulings were not excepted to there is no basis for alleging error upon them. According to the record, they were submitted to. A later and different ruling was excepted to, but no error is assigned on it.

In the course of Rowland's direct testimony he stated that it was arranged between the railroad company and defendant that all freight consigned to defendant should be at once taken to defendant's yard, and that defendant should pay the railroad company the accumulated freight charges on four certain days in each month, and he explained the occasion and necessity for such an arrangement, and showed that it was reasonable.

On being cross-examined he said he was not present when the arrangement was made and only knew the fact from Mitchell, defendant's secretary, and from dealing and paying in that way for a long time. Plaintiff's counsel then moved to strike out all the testimony of this witness in reference to any contract made between defendant and the railroad company by which this delivery of cars was made, and on the ground that it appeared he had no personal knowledge on the subject. The court refused and an exception was taken.

The motion was too broad. The court could not grant it without striking out lawful evidence for the defendant. It applied to matters, some of which were pertinent and within the personal knowledge of the witness. Hence in this view the ruling was proper. *Adams v. People*, 63 N. Y., 621. But aside from this, the plaintiff was not prejudiced. The direction given to the jury deprived the point of whatever importance it might have had under any possible construction of the ruling facts.

We come at last to the essential question, and that is whether the plaintiff made out any case for the jury, and it is only necessary to recur to the correspondence as explained by the surrounding facts not liable to objec-

tion, to find an answer. The business was conducted in writing and was not left to inference or implication.

The defendant ordered eight car loads, or at the most 500 M., and the plaintiff, seeing the state of the market, was anxious to crowd the order. The defendant wished to stop with the amount contracted for, and this was mutually understood, and the plaintiff could not force the defendant to become a purchaser by precipitating unauthorized deliveries.

Finally the defendant carried acceptance up to the highest figures in the order, and which was in furtherance of the plaintiff's interest, and refused to go further. But the plaintiff kept up a fire of consignments until the quantity in excess of the maximum number ordered reached 159 or 160 M.

As these extra shipments reached defendant's yard in precise obedience to the impression they had received from the plaintiff, the defendant in good faith and for the plaintiff's benefit took them in charge as goods consigned for sale but not purchased, and advanced the freight charges. It is plain the property in this lot did not pass out of the plaintiff, and his last letter previous to the fire imports sufficient to negative his claim. The shingles were so manipulated by the plaintiff that they stood in defendant's hands awaiting sale or his orders. And the freight charges were so much paid by defendant to the plaintiff's use. Their consignment, as the fact occurred, was tantamount to an order to defendant to pay these charges on plaintiff's account. Whether the odd 20 M. was taken out of the identical car next succeeding the eighth in the order of dispatch, or of departure from the north, or in the order of arrival at Toledo, or in the order of arrival at defendant's yard, or were taken out of that one of the later arrivals which happened to be most convenient, is of no consequence. Eleven car loads were sent.

The defendant took 500 M., the outside quantity contracted for, and paid for them, and expressly refused to

buy any more. The rest were piled up as consigned goods, on which the defendant, as consignee, had paid the freight charges, and they were lying in that shape for sale, or as subject to the plaintiff's orders. They were in the exact position to which the plaintiff's orders and directions had brought them, and were there and in that situation destroyed without any fault of the defendant.

There is no error and the judgment must be affirmed with costs.

The other Justices concurred.