### UNITED STATES *v.* BURKHARDT.

(*Circuit Court, D. Oregon.* June 22, 1887.)

PERJURY—INSTRUCTION.
    At the close of the instructions to the jury the court, in response to a question from a juror, said the jury might give the verdict in the case in which the defendant committed the alleged perjury such consideration as they thought it entitled to, when it also appeared from the record of the prior action, and the other evidence before the jury, that the jury therein must have disregarded the evidence of the defendant herein alleged to be false. *Held,* that the instruction was erroneous; and, although the verdict of guilty appeared to be fully justified by the evidence, the court could not say, on a motion for a new trial, that the error had no appreciable influence on the result, and therefore granted a new trial.
*(Syllabus by the Court.)*

Indictment for Perjury. Motion for new trial.
*Lewis McArthur,* for the United States.
*W. W. Page,* for defendant.

DEADY, J. The defendant is accused by the grand jury of this district of the crime of perjury. The indictment states that on November 29, 1886, the case of *Elizabeth Stapleton* v. *Oakland Home Ins. Co.,* an action to recover damages for the loss of the New Couch Hotel, destroyed by fire in this city on July 10, 1886, was on trial in this court, when it became and was material to the determination of the issue therein whether said building was destroyed by the procurement of said Elizabeth, and whether the furniture contained therein had been removed therefrom by said Elizabeth prior to said fire; that the defendant, being then duly sworn as a witness in said case, willfully and falsely swore that about two weeks before said fire, and about two days before said Eliza-

beth and her family left said building for the seaside, at Ilwaco, Washington Territory, Timothy Stapleton, her husband, with the aid of the defendant, and the knowledge and assistance of said Elizabeth, removed the furniture, bedding, crockery, carpets, cooking utensils, and cutlery from said hotel, with the exception of the bedsteads, and the mattresses thereon, and a sufficient amount of bedding, crockery, cutlery, and cooking utensils for four or five persons who remained in the building after the Stapletons left the same, to the Ash-street dock, in Portland, and then and there shipped the same, by the Oregon Railway & Navigation Company, to Ilwaco; whereas, in truth and in fact, as the defendant well knew when he so testified, none of said articles excepting five or six pairs of blankets, a small stove, two pulu mattresses, and sufficient cooking utensils and dishes to accommodate the Stapletons and their children while camping at Ilwaco, were so removed or shipped, but were destroyed by fire in and with said hotel on July 10, 1886. The defendant pleaded not guilty to the indictment, and was tried thereon May 24, 1887, and found guilty. He now moves for a new trial in arrest of judgment.

On the argument nothing was said in support of the motion in arrest of judgment; and the burden of the argument for a new trial was the refusal of the court to allow the defendant to offer proof on the question whether the Stapletons did cause the New Couch Hotel to be burned, and the remark of the court, in refusing to admit evidence on the subject, that the question had been decided in their favor in *Stapleton* v. *Oakland Home Ins. Co.*, and was altogether immaterial in this case.

Certainly there was no error in the exclusion of this evidence, or rather in refusing to allow the defendant to go into the question. As was said by the court at the time, if Burkhardt was indicted for falsely swearing on the trial of John Doe for the murder of Richard Roe, that Doe bought a pistol of him, about the time of the homicide, such as it was claimed was used in the killing, it would be equally absurd and irrelevant to offer evidence in defense tending to prove that Doe did kill Roe. The remark that the question whether the Stapletons caused the burning of the hotel had been settled in their favor by the jury that tried the insurance case may have been improper. But it was a mere casual remark, in the course of the colloquy between the court and counsel, and it is not likely that the jury paid any attention to it. And, furthermore, counsel for the defendant provoked the remark, and is largely responsible for it. He endeavored to prejudice the case of the prosecution by indirectly impressing the jury with the idea that the Stapletons caused the burning of the hotel, by insisting, in their presence, that he ought to be allowed to go into that question, and manifesting surprise when he was refused.

It is also claimed that the evidence is insufficient to support the verdict.

The evidence for the prosecution left no room for reasonable doubt that the defendant, on the trial of *Stapleton* v. *Oakland Home Ins. Co.*, willfully and falsely swore that the larger portion of the furniture, par-

ticularly in value, of the New Couch Hotel, a building fitted for the lodging and boarding of at least 50 persons, was hauled to the Ash-street dock, and shipped to Ilwaco by the defendant and Timothy Stapleton, with the knowledge and consent of his wife, Elizabeth; that the articles so removed amounted to three wagon-loads,—one two-horse one, and two one-horse ones; and the shipment took place within a day or two of the departure of the Stapleton's for Ilwaco, and not earlier than June the 24th. It was also satisfactorily shown that the Stapletons did send a camping outfit of small value, as stated in the indictment, on June the 23d, from the hotel to the Ash-street dock, which was shipped on June 24, 1886, to Ilwaco, by the Oregon Railway & Navigation Company, and that the defendant helped to put these things in the wagon, and deliver them on the dock; and there was no testimony tending to show that the Stapletons, or either of them, shipped any other of the furniture or furnishings of this hotel to Ilwaco, or elsewhere, about this time, or at all.

An attempt was made by the defense to prove that some articles—boxes and trunks—were taken away from the hotel during the high water, and in the early part of June, in express wagons, but it amounted to nothing. In a public house, patronized largely by the floating, laboring population, it would have been strange if express wagons were not coming and going night and day with the baggage and effects of parties going to and from the hotel and steam-boat landings and railway stations. But, besides all this, the testimony did not tend in the least degree to identify any of these transactions with the wholesale removal of the furnishings of the hotel that the defendant swore took place, with his assistance, on the day before the Stapletons went to Ilwaco, June the 23d.

An attempt was also made in the testimony and argument for the defense to show that the defendant in his testimony in the insurance case did not confine the removal of the articles to one occasion, but left it somewhat indefinite as to time. But the weight of the evidence is to the contrary. In fact, the impression made by his testimony in the insurance case, according to my notes, is that the removal of the goods was one continuous transaction; and certainly he said nothing to the contrary. On the trial of this case, after hearing the witnesses for the prosecution and the defense, and having his attention called to the matter, he went on the witness stand in his own behalf, and admitted that he swore on the former trial that three wagon-loads, comprising the best part in value of the property of the hotel, were taken from there to the Ash-street dock within a period of two days, and just prior to the departure of the Stapletons for Ilwaco; that he marked some of the articles Ilwaco, and accompanied the last load to the dock, and would not say he did not accompany the other two loads also.

A new trial is also asked on account of an error in the instruction of the court. In the progress of the trial the judgment roll in *Stapleton* v. *Oakland Home Ins. Co.* was offered in evidence by the prosecution, to show the pendency of that action, and the issue therein, wherein and whereabout the defendant is alleged to have sworn falsely. After the

instructions to the jury were closed, and they were in the act of retiring, one of their number asked the question, "What effect shall be given to the verdict of the jury in the insurance case?" to which the court replied, without suggestion or objection from counsel, "Give it such consideration as you may think it entitled to." Upon reflection I am satisfied that this instruction was erroneous. Whart. Crim. Ev. § 602*a*. And while I feel satisfied that the verdict of the jury is fully justified by the evidence, without this instruction, yet I cannot, in the nature of things, be assured that it did not have some appreciable influence on the result. The verdict in the insurance case, in connection with the evidence, showed that the jury, in finding for the plaintiff, must have disbelieved the evidence of the defendant, and that fact may have had some influence with the jury in this case in finding that the defendant was guilty of perjury.

It is to be regretted that this apparently just verdict must be set aside on account of this error. But the defendant, whatever may appear to be the merit or demerit of his case, is entitled to the verdict of a jury thereon impaneled to try the same, without reference to the finding or opinion of any other jury in any other case to which he was not a party.

The motion for a new trial is allowed, and the defendant is held to bail to await such trial in the sum of $2,000.