PEOPLE *v.* ALBERS.

1. PERJURY—FORMER ACQUITTAL—BAR.

   The acquittal of one accused of crime is not a bar to his subsequent prosecution for perjury as a witness at the trial, where, though his testimony was material, its falsity was not, legally speaking, inconsistent with his innocence.

2. JURORS — DISQUALIFICATION — PREJUDICE — ISSUES IN PRIOR CASE.

   On the trial of accused for perjury in giving false testimony on his own trial for bribery, jurors who have sat in a trial at which another than accused was convicted of bribery in connection with the same matter are not disqualified, respondent having been acquitted of the bribery, and that adjudication being conclusive as to respondent's connection with the corrupt plan, if any existed.

3. SAME—VOIR DIRE—QUESTION AS TO PREVIOUS VERDICT.
A juror who has sat in the trial of another person for a crime arising out of the same matter cannot be asked whether he formed any opinion in the previous case as to the truth or falsity of the testimony of a witness who testified therein and who is also a proposed witness in the prosecution on trial, as such a question violates the statute (3 Comp. Laws, § 10239) prohibiting a juror being questioned regarding his verdict.

4. SAME—HARMLESS ERROR.
Refusal, in a criminal prosecution, to permit a juror, who has sat in the trial of another person for a crime arising out of the same matter, to answer the question whether his sitting on that trial and having heard the testimony would affect his judgment in the case at bar, is harmless, where the testimony of the only witness who testified in the previous case was improperly admitted in the case at bar.

5. SAME—REVIEW—QUESTIONS PRESENTED.
Section 10247, 1 Comp. Laws, authorizing the review without exceptions of errors in charging or refusing to charge the jury, does not authorize the review of a challenge to a juror, to the overruling of which no exception was taken.

6. PERJURY—EVIDENCE—HEARSAY.
Where perjury is assigned on accused's denial that V. sent him to bribe R., the testimony of S. that he, S., requested V. to have accused see R. in relation to the matter, is inadmissible as hearsay, though it corroborates V.'s testimony that he did send accused to R. as alleged.

7. SAME—STATEMENT OF CO-CONSPIRATOR.
Where accused is acquitted of an attempt to bribe in connection with a corrupt conspiracy and is subsequently prosecuted for perjury committed at the trial, evidence, otherwise inadmissible, cannot be admitted on the assumption that he made himself a party to the conspiracy and thereby opened the door to such testimony, as the former acquittal conclusively negatives such assumption.

8. CRIMINAL LAW—EVIDENCE—CHARACTER.
The opinion of witnesses as to accused's character for honesty and integrity, based on personal knowledge and not on reputation, is inadmissible.

9. PERJURY—REPUTATION—TRUTH AND VERACITY.
One accused of perjury is entitled to show that his reputation for truth and veracity is good.

10. SAME—SAVING QUESTION.
    Where evidence of accused's reputation for truth and veracity is rejected, in a trial for perjury, the question is sufficiently saved without an express statement by counsel that the purpose of its offer is to prove a trait of character, accused not having offered himself as a witness.

11. SAME—CURE OF ERROR.
    Where, in a prosecution for perjury, the court erroneously excluded evidence that defendant's reputation for truth and veracity was good, the error was not cured by permitting evidence that defendant had a good reputation for honesty and integrity.

12. CRIMINAL LAW—EVIDENCE—SUFFICIENCY—INSTRUCTIONS.
    A charge that whatever would convince the jury beyond a reasonable doubt, in the judgment which they use in their ordinary affairs of life, was all that was necessary to convince them sitting as jurors in any criminal case, is misleading.

13. PERJURY—MATERIALITY OF TESTIMONY.
    Where, in a prosecution of accused for offering a bribe to R., R. testified that accused offered him a bribe for his vote, and told him that V. had sent him there, accused's evidence in rebuttal, in which he denied that V. had in fact sent him to R., was material, and, being false, was sufficient to sustain an indictment for perjury.

Exceptions before judgment from superior court of Grand Rapids; Newnham, J. Submitted June 17, 1904. (Docket No. 195.) Decided October 4, 1904.

Gerrit H. Albers was convicted of perjury. Reversed.

*Frank A. Rodgers* and *Myron H. Walker*, for appellant.

*William B. Brown*, Prosecuting Attorney, and *Charles E. Ward*, Assistant Prosecuting Attorney, for the people.

CARPENTER, J. In May, 1903, respondent was acquitted of the charge of corruptly offering to one Joseph Renihan, an alderman of the city of Grand Rapids, $3,000, with the intent to induce said Renihan to vote, as a member of

the common council of the city of Grand Rapids, in favor of entering into a contract for the purchase of water, to be conveyed from Lake Michigan to said city, for municipal and other purposes. On that trial respondent was a witness in his own behalf. He corroborated the testimony of Renihan that he offered him $3,000 for his vote, and that he told him that one Dr. De Vries had sent him there; but he denied that De Vries had in fact sent him, and he testified that he made this offer with no corrupt motives, but in order to ascertain whether or not Renihan was an honest man. In the present case, respondent is charged with perjury in testifying that De Vries did not in fact send him to Renihan. He was convicted of that charge, and asks that conviction to be set aside upon many grounds.

*First.* Respondent claims that his acquittal by the jury of the charge of attempting to bribe Renihan is a bar to the prosecution of this suit. He sets forth that:

" The question of fact as to whether this respondent was sent by the said De Vries or some one else, or went of his own accord, to see Renihan, was in issue upon said trial, and evidence was adduced upon the side of the people and of this respondent thereto, and the determination of the same was material to and necessarily involved in the determination of the guilt or innocence of this respondent upon said charge, and was necessarily passed upon and determined by the jury in arriving at their verdict."

In support of the contention that his acquittal of the charge of bribery is res adjudicata, defendant cites *U. S.* v. *Butler*, 38 Fed. 498; *Cooper* v. *Commonwealth*, 106 Ky. 909 (51 S. W. 789, 59 S. W. 524, 45 L. R. A. 216, 90 Am. St. Rep. 275); *Petit* v. *Commonwealth*, (Ky.) 57 S. W. 14.

In *U. S.* v. *Butler*, supra, respondent was first acquitted on the charge of selling liquor without payment of the tax. He was subsequently put on trial for perjury in swearing on his preliminary examination that he did not so sell liquor. It was held that the acquittal of respondent on the first charge was a bar to his prosecution on the second.

In *Cooper* v. *Commonwealth*, supra, the respondent was first prosecuted for adultery and acquitted. It was held that this acquittal prevented his conviction in a prosecution, subsequently commenced, charging him with having committed perjury in the first suit in denying that he committed the adultery there charged.

In *Petit* v. *Commonwealth*, supra, respondent was first tried and acquitted on a charge of carrying a concealed weapon, viz., a pistol. It was held that this acquittal prevented his conviction on a prosecution, subsequently commenced, on the charge of committing perjury in testifying in the first suit that he was not guilty of the charge made against him.

These cases are authority for the proposition that an acquittal of a certain charge is a complete defense to a subsequent prosecution for perjury which is based upon the assumption that respondent was guilty of that charge. If this proposition be sound, and it has been denied (see *State* v. *Caywood*, 96 Iowa, 367 [65 N. W. 385]; *Hutcherson* v. *State*, 33 Tex. Cr. Rep. 67 [24 S. W. 908]; *People* v. *Sculley*, 3 N. Y. Cr. R. 244), it has no application to this case. It is true that the perjured testimony under consideration was material, because it strengthened respondent's claim that he was not acting corruptly. But its falsity is not, legally speaking, inconsistent with respondent's innocence of the crime of bribery. Because respondent was innocent of that crime, it does not follow that all testimony tending to prove his innocence was true, and that all testimony tending to prove his guilt was false. It is not even certain that the jury who acquitted respondent of the charge of bribery found that De Vries did not send him to Renihan. From the nature of the case this is a fact extremely difficult, if not impossible, to be proved. But if we assume that they did so find, as alleged in respondent's plea, it by no means follows that such finding is res adjudicata in this suit. The foregoing authorities certainly do not so hold. Because the people may not prosecute one for perjury upon the basis that he

was guilty of the crime for which he has been acquitted, it by no means follows that they cannot prosecute him for perjury simply because the jury credited his perjured testimony, and particularly when the prosecution for the crime of perjury does not proceed upon grounds inconsistent with his innocence of the first charge.

The verdict of the jury in the first case adjudged respondent innocent of the crime of bribery. By what reasoning can it be contended that it also adjuged him innocent of the crime of perjury in giving his testimony therein? He was not then tried for that charge, and he could not have been there convicted of it. If a prosecution on that charge had been at once instituted, the pendency of the first prosecution could not have been pleaded in abatement of the second; and it has been held that the judgment in the suit in which perjury is alleged to have been committed is inadmissible evidence on the question of guilt or innocence in the prosecution for perjury. See *U. S.* v. *Burkhardt*, 31 Fed. 141; *Estill* v. *State*, 38 Tex. Cr. Rep. 255 (42 S. W. 305); *State* v. *Caywood*, 96 Iowa, 367 (65 N. W. 385); *State* v. *Williams*, 60 Kan. 837 (58 Pac. 476); *People* v. *Sculley*, 3 N. Y. Cr. R. 244; *Hutherson* v. *State*, 33 Tex. Cr. Rep. 67 (24 S. W. 908).

The general proposition that one can escape punishment for perjury, because he succeeded in inducing a jury to credit his false testimony, is supported neither by authority nor by reason. If he could, then it is true, as stated by counsel for the people, that the law encourages parties, particularly respondents in criminal cases, to perjure themselves. We must declare that the law is guilty of no such folly.

Is the rule changed by the fact that the suit in which credit was given to the perjured testimony was another suit between the same parties? We think not.

"The former verdict is conclusive only as to facts directly and distinctly put in issue, and the finding of which is necessary to uphold the judgment. The doctrine of estoppel [that is, the conclusiveness of a former judg-

ment] is restricted to facts directly in issue, and does not
extend to facts which may be in controversy, but which
rest in evidence, and are merely collateral. 'A fact or
matter in issue is that upon which the plaintiff proceeds
by his action, and which the defendant controverts in his
pleadings, while collateral facts are such as are offered in
evidence to establish the matters or facts in issue.' *Gar-
wood* v. *Garwood*, 29 Cal. 521." 1 Freeman on Judg-
ments, § 257.

See, also, *King* v. *Chase*, 15 N. H. 16 (41 Am. Dec.
675); Wells on Res Adjudicata, p. 195; *Burlen* v. *Shan-
non*, 99 Mass. 202 (96 Am. Dec. 733); *Dickinson* v.
*Hayes*, 31 Conn. 423; *People* v. *Johnson*, 38 N. Y. 65
(97 Am. Dec. 770).

*Second.* Immediately before the trial of respondent,
several members of the jury had sat as jurors in the case of
*People* v. *Jacob P. Ellen*, in which Ellen was convicted of
accepting a bribe to vote as a member of the common coun-
cil of the city of Grand Rapids in favor of the city's entering
into the water contract heretofore referred to. It is urged
that the fixed opinion thus formed that there was a cor-
rupt plan to induce the city to enter into this water con-
tract disqualified these men to sit as jurors on the trial of
respondent.

Was the existence of this corrupt plan a material fact
respecting respondent's guilt or innocence ? It certainly
was not a fact necessary to be established, and it was not
established, on respondent's trial.

Would testimony tending to prove the existence or non-
existence of such plan have been material ? If respond-
ent willfully and falsely testified that De Vries did not
send him to Renihan, he was guilty of perjury. If he did
not willfully and falsely so testify, he was not guilty of
perjury. It is obvious that the existence or nonexistence
of the corrupt plan to induce the city to enter into the
water contract had no direct bearing on this issue. It is
true that proof of the existence of such plan might have a
tendency to increase the probability of respondent's guilt;
but reflection will show that this is true only upon the as-

sumption that respondent was a party to that plan, and this in turn rests upon the assumption that respondent did corruptly attempt to bribe Renihan. In other words, the corrupt plan was material to this issue only upon the assumption that respondent was guilty of the crime of bribery, for which he has been acquitted. Whatever we may think of the authorities (see *U. S.* v. *Butler* and *Cooper* v. *Commonwealth*, supra) which hold that such acquittal is a conclusive adjudication that respondent was not guilty of perjury in testifying to his innocence, there can be no doubt that it is a conclusive adjudication of such innocence. When a fact has once been judicially determined, that determination is conclusive in all other controversies between the same parties. This rule applies, though the subject-matter and purposes of the two controversies are not the same. See *Coffey* v. *U. S.*, 116 U. S. 436 (6 Sup. Ct. 437); *Green* v. *Bogue*, 158 U. S. 478 (15 Sup. Ct. 975); *Meadows* v. *Duchess of Kingston*, Ambl. 756; *Langmead* v. *Maple*, 18 C. B. (N. S.) 255; 1 Freeman on Judgments, § 253. The rule applies, though the fact which is directly determined in the first suit is only tried in a collateral way or is incidentally involved in the second suit. See *Meadows* v. *Duchess of Kingston*, supra. See, also, *Coffey* v. *U. S.*, supra; *Rex* v. *Duchess of Kingston*, 20 How. St. Tr. 355–538; Van Fleet, Former Adjudications, pp. 28, 29. This rule is not confined in its application to civil cases. It applies to criminal prosecutions. See *Rex* v. *Duchess of Kingston*, supra. Evidence cannot, therefore, be introduced in this case which is admissible only upon the assumption of respondent's guilt of the crime of bribery, for which he has been acquitted. We must hold, therefore, that the existence of such corrupt plan was a fact altogether immaterial in the prosecution of respondent for perjury. It is possible, though, in our judgment, not probable, that the jurors' fixed belief in the existence of the corrupt plan might unduly incline them to credit De Vries' testimony, which was in harmony with such belief. The legal disqualifications of a juror must be tested

by something more certain than the bare possibility that he may be prejudiced by his belief of an immaterial fact. Otherwise, no person would be qualified.

Indorsed upon the information in this case as witnesses for the people were the names of Lant K. Salsbury, Clark Slocum, and Corey P. Bissell. These three had been sworn as witnesses in the *Ellen Case*. One of the jurors who sat in the *Ellen Case* was asked "whether he had formed any opinion in that case as to the truth or falsity of the testimony of Lant K. Salsbury." He was asked, further, if the three witnesses above named should testify in this case to the same state of facts as in the *Ellen Case*, "would the fact of your sitting on the other trial and having heard the testimony affect your judgment in this case?" These questions were excluded. An answer to the first question, if permissible at common law, would have violated the statute (section 10239, 3 Comp. Laws), which prohibits a juror being questioned respecting his verdict. See *Welch* v. *Publishing Co.*, 83 Mich. 661 (47 N. W. 562, 11 L. R. A. 233, 21 Am. St. Rep. 629). As neither Slocum nor Bissell testified in this case, and as the testimony of Salsbury, as will hereafter appear, was improperly admitted, respondent was not aggrieved because the court refused to permit the juror to answer the second question.

It appears by the record that one of the jurors who sat in this case was not a taxpayer, as required by law, and that this fact was brought to the attention of the trial court and to both counsel. He was not challenged, and the court ordered him sworn as a member of the jury, to which ruling no exception was taken. While we may review without exception errors in charging or refusing to charge the jury (section 10247, 3 Comp. Laws), it is well settled that we have no authority to review other rulings not excepted to. See *Roberts* v. *Fitzgerald*, 33 Mich. 4; *Larkin* v. *Lumber Co.*, 42 Mich. 296 (3 N. W. 904). We have, therefore, no authority to review the ruling under consideration, and this court is charged with no higher

duty than that of keeping within the prescribed limits of its authority.

It is no answer to this point to assert, relying on *Hill* v. *People,* 16 Mich. 351, that respondent could not waive his objection to the juror's want of qualification, and therefore his failure to except did not prevent his subsequently questioning the juror's qualification. In that case the propriety of the ruling of the trial court was considered on an exception to the court's refusal to grant a new trial. If it be true that defendant in a criminal case cannot waive any lack of qualification in a juror, it is none the less true that his failure to except to the court's ruling does not give this court authority to review such ruling in a proceeding where, as in this case, it can review only rulings to which exception was taken. The propriety of the ruling in question must therefore be assailed, if assailed at all, by collateral attack, and whether or not such an assault will succeed is a question foreign to this issue.

*Third.* The prosecution was permitted to prove both by witnesses De Vries and Lant K. Salsbury that the latter requested the former to see respondent in relation to the water deal. It will be conceded that this conversation between De Vries and Salsbury, standing by itself, was immaterial to the issue of respondent's guilt. If this testimony was admissible at all, it was so only because it tended to corroborate the testimony of De Vries that he sent respondent to see Renihan. While it may be conceded that it would have such a tendency, and was therefore material, it by no means follows that it was competent. It would have a tendency to convince the jury that De Vries actually did send respondent, only upon the assumption that De Vries complied with Salsbury's request, and whether he did so comply depends upon the credit the jury gave to De Vries' testimony that he did. In other words, the value of Salsbury's testimony rests in part on the veracity of De Vries. This testimony was, therefore, hearsay testimony, which is defined as "that kind of evidence which does not derive its credibility solely from the

credit due to the witness himself, but rests also in part on the veracity and competency of some other person." 1 Phillips on Evidence, p. 169; 1 Greenleaf on Evidence, § 99; 11 Am. & Eng. Enc. Law (2d Ed.), p. 520. This testimony was not a part of the res gestæ, and did not come within any of the excepted classes of hearsay testimony, which are, under the rules of law, admissible. It is no answer to this objection to say that this testimony furnished moral corroboration to the testimony of De Vries. This argument might be urged for the admission of very much of the hearsay testimony which the rules of law exclude. See *People* v. *Abell*, 113 Mich. 80 (71 N. W. 509). And we cannot accept it without altogether overthrowing the rule which excludes hearsay testimony, and that every one will concede we cannot do.

It is urged that respondent, by undertaking to bribe Renihan, made himself a party to the conspiracy to procure the water contract, and therefore the acts of other conspirators were competent. This argument rests upon the assumption that respondent did corruptly attempt to bribe Renihan, and, as we have shown in another part of this opinion, evidence is not admissible upon that assumption.

*Fourth.* The court refused to permit witnesses introduced by respondent to give their opinion, based on personal knowledge, and not on reputation, of respondent's character for honesty and integrity. Was this error?

The purpose of testimony of this nature is to prove that the person charged with crime possesses a character inconsistent with guilt. It may be said that the authorities are substantially agreed that it is not competent to prove such character by specific acts of respondent, and that it is competent to prove such character by reputation; that is, by the estimate of the community in which he lives. It is urged in this case that it is also competent to prove it by the opinion of those who have habitually observed respondent. We do not consider ourselves at liberty to examine the arguments in support of this contention, upon

the assumption that this is an unsettled question. While there are authorities holding such testimony to be admissible (see 1 Bishop, New Criminal Procedure, § 1117, and the authorities there cited), we think it authoritatively settled that the rule of the common law, which we are bound to apply, excludes it. See Underhill, Criminal Evidence, § 81; Wharton, Criminal Evidence, §§ 58, 259, 261; 1 Best on Evidence, 486; 1 Phillips on Evidence, 764; *Reg.* v. *Rowton*, 10 Cox, Cr. Cas. 25; *Rex* v. *Jones*, 31 How. St. Tr. 310; *Hirschman* v. *People*, 101 Ill. 568; *Berneker* v. *State*, 40 Neb. 810 (59 N. W. 372); *Jackson* v. *State*, 78 Ala. 471; *State* v. *King*, 78 Mo. 555; Evidence of Character, 70 Law Times, 167, quoted 12 Cent. Law J. 415. The ruling under consideration was therefore correct.

*Fifth.* The trial court refused to permit respondent to introduce testimony tending to prove that his reputation for truth and veracity was good.

" The particular trait of character which the indictment impugns, probably by all opinions, may be given in evidence in defendant's favor." 1 Bishop, New Criminal Procedure, § 1113; *People* v. *Stewart*, 28 Cal. 395. See, also, *Coffee* v. *State*, 1 Tex. App. 548.

The excluded testimony was, therefore, clearly admissible. It is said by the counsel for the people that this testimony would not have been excluded, had defendant's counsel indicated that this testimony was directed to prove a trait of character, and that it was excluded because respondent had not been a witness, and it was understood that the purpose of this testimony was to treat respondent as though he had been. It is true that defendant's counsel did not state the purpose of this testimony, but the record shows nothing — either inquiry from the court, or opposing counsel, or anything else — that made it his duty to state it. We are at a loss to understand why its purpose was not sufficiently obvious. Nor is respondent's counsel at fault because the trial court and counsel for the people erroneously assumed that it was his purpose to treat re-

spondent as though he had been a witness. He was not informed of this erroneous understanding, and had, therefore, no opportunity to correct it.

It is urged that in any event the ruling was not prejudicial to respondent, because he was permitted to offer testimony tending to prove that his general reputation and his reputation for honesty and integrity was good. If it is true, as assumed by the people, that a good reputation for honesty and integrity necessarily proves a good reputation for truth and veracity, it does not follow that the exclusion of this testimony was not injurious. We cannot say with certainty that the jury gave credit to the testimony that respondent's reputation for honesty and integrity was good, and we certainly cannot say that they would have discredited the excluded testimony respecting respondent's reputation for truth and veracity. Counsel's argument that the error under consideration was harmless is based on the assumption that the jury did in fact infer, from the testimony that respondent's general reputation was good, that his reputation for truth and veracity was good. The jury were not encouraged to draw any such inference. They were not told that they might draw it. They knew that this testimony was excluded, not on the ground now urged, that the fact was already proved, but because it was immaterial. It is difficult to believe that the jury thought it their duty to infer the existence of a fact which the court decided to be immaterial.

*Sixth.* It is urged that the conviction in this case cannot stand because it was secured by the uncorroborated testimony of De Vries. We do not think it can be said that the testimony of De Vries is uncorroborated. The testimony of Renihan and the testimony of respondent himself, given on the former trial, furnished such corroboration.

*Seventh.* In charging the jury, the trial judge used this language:

"Whatever would convince you beyond a reasonable doubt, in the judgment which you use in your ordinary

affairs of life, is all that is necessary to convince you sitting as jurors in any criminal case."

I think it may be said that in the ordinary affairs of life most men never require evidence which convinces them beyond a reasonable doubt. The charge under consideration, therefore, tells such men to act on an impossible assumption, and it is likely to lead to the notion—a notion that all will concede to be erroneous—that they may convict a person charged with crime on such evidence as would convince their judgment in the ordinary affairs of life.

Says the supreme court of Wisconsin of a similar charge:

"The absence of doubt of guilt, when the measure and limit of the scrutiny is that which reasonable men would exercise in the ordinary affairs of life is not sufficient; for it does not necessarily result therefrom that the evidence, properly considered, would leave no such doubt. * * * If the circuit judge desired to make use of any such analogy, he should have told the jury that it was their duty to scrutinize the evidence with the utmost caution and care, bringing to that duty the reason and prudence which they would exercise in the most important affairs of life." *Anderson* v. *State*, 41 Wis. 430.

The language employed is not altogether clear, and it is possible that it misled the jury.

*Eighth.* Respondent suggests, though it can scarcely be said that he contends, that the alleged perjured testimony was immaterial. To avoid any misapprehension, though at the risk of repetition, we think it proper, as well as sufficient, to say that for the reasons heretofore set forth it was in our judgment material.

No other complaint demands discussion.

The conviction is set aside, and a new trial granted.

The other Justices concurred.