Cooper v. Commonwealth.

---

CASE 112—INDICTMENT FOR ·PERJURY—JUNE 17.

## Cooper v. Commonwealth.

APPEAL FROM ROWAN. CIRCUIT COURT.

CRIMINAL LAW—PERJURY.—On the trial of an indictment for perjury alleged to have been committed by the defendant in asserting his innocence upon a previous trial for a misdemeanor,

his acquittal on the former trial is conclusive against the falsity of such testimony.

A. T. WOOD AND R. BLAIR FOR THE APPELLANT.

> The evidence in this case is insufficient to convict the appellant of perjury. The facts proven are consistent with his innocence, and certainly it can not be said that the falsity of his testimony was established either by two witnesses or by one witness with strong corroborating circumstances. Com. v. Davis, 92 Ky., 461; State v. Massy, 86 N. C., 659.

> (No brief on file for appellee).

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The appellant and one Libbie Purvis were jointly indicted in the Rowan Circuit Court for the offense of adultery. The trial under that indictment resulted in a verdict of acquittal for appellant. The grand jury of Rowan county thereupon reported this indictment against him in which it is charged that upon the trial of appellant and Libbie Purvis upon the charge of adultery "he did knowingly, willfully, and corruptly swear that he had not had carnal sexual intercourse with Libbie Purvis, when same was false and untrue, and was known by him to be false and untrue." The trial under this indictment resulted in a verdict of guilty, and a judgment sentencing appellant to confinement in the penitentiary, which we are asked upon this appeal to reverse.

The principal question to be considered is the effect which is to be given to the indictment, trial, verdict and judgment of acquittal of appellant under the indictment for adultery, as it is manifest that appellant can not be guilty in this case if he was innocent of the charge contained in the indictment.

His guilt or innocence of the offense of having had carnal sexual intercourse with Libbie Purvis was the exact question which was tried in the first

Cooper v. Commonwealth.

proceeding, and as a result of that trial the defendant was found not guilty. In order to convict him in this case, it was necessary for the jury to believe that he was guilty of the identical offense for which he had been tried and acquitted under the other indictment, as it is evident that, if he was innocent of having had carnal sexual intercourse with Libbie Purvis, he was not guilty of false swearing when he stated that he had not had such intercourse with her. We therefore have, as a result of the trial of appellant under these two indictments, a verdict and judgment finding him not guilty of the offense of having had carnal sexual intercourse with Libbie Purvis, and in the second case a verdict and judgment finding him guilty of false swearing when he testified that he had not had such intercourse with her; in other words, the first jury found him innocent of the misdemeanor with which he was charged, and the second jury found him guilty of a felony because he testified that he was not guilty of such misdemeanor. It certainly was never intended that the enginery of the law should be used to accomplish such inconsistent results. It appears to us from the conflicting character of the testimony in the case upon the question of defendant's guilt or innocence that a verdict of the jury might have been upheld in the first case whether it found one way or the other, but certainly the finding of the jury must be conclusive  ofthe fact considered as against the Commonwealth, and preclude any further prosecution which involves the ascertainment of such fact.

A question analogous to the one at bar was considered in the case of Coffey v. United States, 116 U. S., 436, [6 Sup. Ct. 437], the facts in which case are about as follows: Coffey was a .distiller, and was proceeded against under a section of the statute

Cooper v. Commonwealth.

for defrauding, or attempting to defraud, the United States of the tax on spirits distilled by him, and the copper stills and other distillery apparatuses used by him and the distilled spirits found on his distillery premises were seized. One section of the statute provides, as a consequence of the commission of the prohibited act, that this certain property should be forfeited, and that the offender should be·fined and imprisoned. Coffey was first proceeded against on the criminal charge, and acquitted. Subsequently a proceeding to enforce the forfeiture against the *res* was instituted. The defendant in the proceeding *in rem* relied upon his acquittal under the criminal charge, and Judge Blatchford, in delivering the opinion of the court, said:

"Where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person on the subsequent trial of a suit *in rem* by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit *in rem*. It is urged as a reason for not allowing such effect to the judgment that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States in the suit *in rem*. Nevertheless, the fact or act has been put in issue, and determined against the United State; and all that is imposed by the statute as a consequence of guilt is a punishment therefor. There could be no new trial of the crimnal priosecution after the acquittal in it."

And the conclusion reached in that case is in consonance with principles laid down by the United States Supreme Court in the case of Gelston v. Hoyt, 3 Wheat., 246.

In the case of Rex v. Duchess of Kingston, 20 Howell, St. Tr. 355 and 538, the court held:

"The judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court."

And in the case of United States v. McKee, 4 Dill., 128, [Fed. Cas. No. 15,688], the defendant had been convicted and punished under a section of the Revised Statutes for conspiring with certain distillers to defraud the United States by unlawfully removing distilled spirits without the payment of taxes thereon. He was afterwards sued in a civil action by the United States, under another section, to recover a penalty of double the amount of the taxes lost by the conspiracy and fraud. The court held that the two alleged transactions were but one, and that the suit for the penalty was barred by the judgment in the criminal case. The decision was put on the ground that the defendant could not be twice punished for the same crime, and that the former conviction and judgment were a bar to the suit for the penalty.

And Judge Van Fleet, in his Treatise on the Law of Former Adjudication (page 1242, sec. 628), says:

"If there is a contest between the State and the defendant in a criminal case over an issue, I know of no reason why it is not res judicata in another criminal case;" citing a number of American decisions in support of the text.

Appellant in this case had already been tried and acquitted of the offense of having had carnal

[ 58 ]

sexual intercourse with Libbie Purvis, and the judgment in that case is *res judicata* against the Commonwealth, and he can not again be put on trial where the truth or falsity of the charge in that indictment is the gist of the question under investigation. It therefore fol· lows that appellant was entitled to a peremptory instruction to the jury to find him not guilty.

For reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.

JUDGE HOBSON DISSENTS. JUDGE PAYNTER CONCURRING IN THE DISSENT.

Appellant, when indicted for adultery with Libbie Purvis, secured an acquittal by swearing falsely that he had not had carnal intercourse with her; and being indicted and convicted of false swearing in giving this testimony, it is held that because he was acquitted in that case he can not be punished for the crime thus committed. In other words, it is held that if the defendant in a criminal case will swear to enough to secure an acquittal, and does in this manner get a verdict in his favor in that case, he can not, although clearly guilty, be punished for the perjury or false swearing by means of which he defeated justice. Such a rule puts persons charged with crime, when testifying for themselves, on a different plane from other witnesses and offers an incentive not only to perjury on their part, but to the corruption of justice in other ways to secure a verdict in their favor which will protect them from punishment for both the offense for which they are tried and the perjury committed on the trial. It is certainly anomalous to say that if a criminal attempts by perjury to secure an acquittal and fails in the attempt, he may be punished

Cooper v. Commonwealth.

for the crime; but that if he is successful, no punishment can be inflicted. Undoubtedly it would seem that there is, at most, as sound reason for punishing this grave crime where the ends of justice have been thereby defeated as where the effort to defeat justice has proved abortive.

In Freeman on Judgments, sec. 318, it is said:

"The principles applicable to judgments in criminal cases are, in general, identical, so far as the question of estoppel is involved, with the principles recognized in civil cases. An acquittal or a conviction, under an indictment for any offense, is a bar to any subsequent indictment substantially like the former. But in criminal as in civil actions, it is essential that the judgment be on the merits, and not tainted with fraud. Thus going into a favorable court, and submitting to a conviction, in order to escape a severe penalty, is no bar to a *bona fide* prosecution."

The rule as to collateral attack on judgments in civil cases for fraud is thus stated in 12 Amer. & Eng. Ency. of Law, 147-s:

"It is a general rule at common law that parties and privies to a judgment may not impeach it collaterally for fraud, though it seems they may prove that the judgment is being fraudulently used for a different purpose than that intended, or that it is based upon a paper fraudulently obtained. This rule has, however, been held inapplicable where no appeal lies from the judgment."

When there is no appeal, and no other way to set aside a judgment obtained by fraud, to hold it conclusive when offered in bar of another action is to allow the wrongdoer to profit by his own wrong. Thus, in Newcomb's Executor's v. Newcomb, 13 Bush, 544, [26 Am. Rep., 222]

the defendant could not appeal from the judgment, move for a new trial or file a petition to set aside, and this court, sustaining her right to treat the judgment as void when offered in another suit in bar of her action, said:

"Recognizing the general doctrine that judgments of courts of general jurisdiction are not the subject of an attack in a collateral proceeding, it becomes necessary to determine whether this rule, or the reasons upon which it is based, is to be applied to the case before us.

"The rule had its origin from motives of public policy, sustained, as all the authorities conduce to show, by the additional reason that the party aggrieved has every opportunity offered him for redress if wrong has been committed; he may appeal, move to set aside the judgment or for a new trial, so long as the court rendering the judgment has any control over it. He may also file his petition to review the judgment, or a petition for a new trial. Such proceedings the policy of the law requires he shall adopt, and will not permit collateral attacks upon such judgments when they may be offered as evidence, or relied on as the final determination of the rights of the parties."

On the same principle, foreign judgments may be avoided for fraud in their obtention, for the reason that there is no other way to correct the matter, and that the ends of justice require this. (Freeman on Judgments, sec. 591.)

In a criminal case the State can not obtain a new trial for newly-discovered testimony after the term, and if the judgment bars a prosecution of the defendant for his wilful perjury, whereby he obtains it, there is no remedy. The ends of justice have not only been defeated,

but the foundations of judicial proceedings have been sapped.

The rule, stated by Mr. Freeman above that a judgment rendered in an inferior court to which the defendant voluntarily goes to escape a severer penalty is not a bar to a subsequent prosecution for the same offense, rests on the ground that he thus perpetrates a fraud on the State, and has been followed by this court in Carrington v. The Commonwealth, 78 Ky., 83. The fraud in this class of cases is in giving the court jurisdiction; but certainly fraud of this sort is less tolerated in the eye of the law than the abhorred crime of perjury, cheating the court out of the truth, after its jurisdiction has lawfully attached.

In State v. Swepson, 79 N. C., 632, the defendant had, by imposition on the court, had a jury impaneled and a formal verdict of not guilty entered, on the ground that the matter had been compromised with the State. This was held no bar to another trial under the same or another indictment. The court said:

"The State ought to have some remedy. Guilt can not be allowed to protect itself by fraud and corruption, or else the tribunals of justice become dens of thieves, and law as administered in them is a machine to punish the weak and screen the powerful. . . . There is a remedy not without precedent or authority for its use, plain, and not of infrequent use, laid down in the elementary works on law, and supported by the adjudications of respectable courts. ·This remedy is in the court in which the trial was had, and is independent of any action of this court. It is asserted in many text books and dicta of judges and supported by some decisions, that a verdict of acquittal on an indictment for a misdemeanor

procured by the trick or fraud of the defendant, is a nullity, and may be treated as such; and the person acquitted by such means may be tried again for the offense of which he was acquitted. 3 Greenl. Ev., sec. 38; 1 Wharton, Criminal Law, sec. 546; 3 Ibid, sections 3221-3222; 1 Chitty, Criminal Law, 657."

If the defendant, where his constitutional right not to be put in jeopardy a second time for the same offense is not involved, may be estopped, by reason of his own fraud in procuring the judgment, from relying on the plea of *res adjudicata,* how much the more should he be estopped to make this plea to escape punishment for the crime of perjury by means of which he obtained the judgment. There is not a shadow of doubt of appellant's guilt in the case before us, and not to punish him is to lose sight of the principles on which the rule relied on rests.

The opinion is based on the ground that the question whether appellant had had sexual intercourse with Libbie Purvis was litigated and determined on the trial of the indictment against him for adultery, and that the State is concluded by the judgment in that case from litigating with him again this precise question on a charge of false swearing on that trial. None of the authorities cited by the court sustain this conclusion; nor is it sustained by the principles on which the doctrine of *res adjudicata* rests. It rests after all on public policy and convenience. Its design is to protect courts of justice and secure for them respect. It is court-made law and, like other common law principles, is not to be stretched beyond its reason. The purpose of the rule is to promote the orderly administration of justice, not defeat it. It rests on the ground that the law having provided

certain processes for the correction of errors or defects in judgments, the ends of justice require that these should be followed. But it was never intended to assail the right of the courts to protect the administration of justice from perjury, a right which all courts must of necessity possess if judicial proceedings are not to become a solemn farce. Neither the reason, purpose nor spirit of the rule permits its application in such a manner as to destroy respect for courts of justice or make them impotent to punish crime.

For these reasons I dissent from the conclusion reached by the majority of the court.

This dissent which was announced at the time was, by an oversight, not filed before.