## Commonwealth v. Spivey.

(Decided April 22, 1932.)

484

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, and JOHN W. WALKER for Commonwealth.

SHUMATE & SHUMATE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN— Certifying the law.

In June, 1929, Albert Spivey was killed, and the following October Gentry Richardson and others were indicted for this homicide. In February, 1930, Richardson was put upon his separate trial, and convicted of the offense of manslaughter. At this trial, the present appellee, Bessie Spivey, the widow of Albert Spivey, testified for Richardson, and in her testimony deposed that in the trouble wherein her husband was killed he had fired three shots before any other shots were fired.

After the conviction of Richardson, Bessie Spivey was indicted for the offense of false swearing, the commonwealth claiming that she had sworn falsely in the Richardson trial when she stated that her husband had fired the first three shots. She was tried on this indictment at the February, 1931, term of the Estill circuit court and acquitted. In the meantime, Richardson had appealed his judgment of conviction, and that judgment had been reversed by this court in an opinion which may be found in Richardson v. Commonwealth, 235 Ky. 469, 31 S. W. (2d) 728. After Bessie Spivey had been acquitted as stated of the charge of false swearing, and at

the same February, 1931, term of the court at which she had been tried, Richardson was again placed on trial for the killing of Albert Spivey. Again did Bessie Spivey testify in his behalf, and she gave the same testimony as she had on his first trial. Richardson was again convicted, and thereupon the commonwealth again indicted Bessie Spivey for the offense of false swearing in the second trial of Richardson, again claiming that her testimony that her husband had fired the first three shots was false. When she was put upon her trial under this second indictment for false swearing, she pleaded all of the proceedings and her acquittal under the first indictment as a plea of res adjudicata of the issue of the falsity of the evidence she gave on behalf of Richardson in both of his trials.

The court deferred passing on the plea until the commonwealth had introduced all of the testimony upon which it intended to rely for a conviction, and, it being then admitted that the plea of res adjudicata set up the facts with reference to the issues involved and the result of the trial under the first indictment for false swearing, the court peremptorily instructed the jury to find the appellee not guilty, being, as he said, of the opinion that her first trial established the truth as between her and the commonwealth of the evidence she had given in the Richardson trials. The commonwealth has appealed to this court for the purpose of having the law certified as to the correctness of the trial court's ruling in this regard.

It is first insisted by the commonwealth that under our Code of Criminal Practice no provision is made for a plea of res adjudicata. It relies on section 172 of the Criminal Code of Practice, which states that there are but three kinds of pleas to an indictment: (1) The plea of guilty; (2) that of not guilty; (3) that of former conviction or acquittal. However, the plea of res adjudicata, if it be available in a criminal cause, is really, when advanced by the accused, but an element of the plea of not guilty, because, if it be sustained, then the accused must be held, as was the accused in this case, not guilty of the offense charged. We are of the opinion that, when advanced by the accused, the plea of res adjudicata is available under the plea of not guilty. This brings us to the question whether or not the plea of res adjudicata

is available in a criminal case, and, if so, was it aptly applied in this case.

In the celebrated case of Rex v. The Duchess of Kingston, 20 Howard State Trials 538, the principles of res adjudicata in a criminal cause were formulated. The principle is not often invoked because its effect is necessarily to a considerable extent lost sight of and is swallowed up in a broader doctrine of former conviction or former acquittal. Of course, the latter doctrines are applicable only where there is an identity of offense charged and an identity of the parties. As, in the instant case, the alleged false swearing took place in different trials, there was not an identity of offense. But as pointed out in the case of Commonwealth v. Ellis, 160 Mass. 165, 35 N. E. 773, where this doctrine of res adjudicata was invoked in a criminal case on behalf of the commonwealth, it is well settled that the rule of res adjudicata is the same in a criminal proceeding as it is in a civil proceeding.

In Jay v. State, 15 Ala. App. 255, 73 So. 137, there is an illuminating discussion of the doctrine of res adjudicata in criminal causes, and it is there stated that, under this doctrine, any fact that was adjudicated and determined upon its merits which was not merely collateral, and which was within the issues framed, is forever foreclosed and barred in any future litigation involving that adjudicated fact when the same is again contested between the same parties.

In Freeman on Judgments (5th Ed.), sec. 648, the learned author says:

"There is no reason why a final judgment in a criminal prosecution or proceeding should not under proper circumstances be given conclusive effect as an estoppel or bar. The same policy which dictates the rule in civil cases requires it in criminal cases . . . The principles applicable to judgments in criminal cases are in general identical so far as the question of estoppel is involved with the principles recognized in civil cases. . . . Even where the crimes charged are different and a plea of former jeopardy therefore unavailable, a criminal judgment is res adjudicata of every matter determined by it where the conditions essential to the operation of this doctrine are present. But under such circum-

stances the previous judgment is conclusive only as to those matters which were in fact in issue and actually or necessarily adjudicated.''

The position taken by this court in the case of Teague v. Commonwealth, 172 Ky. 665, 189 S. W. 908, L. R. A. 1917B, 738, overruling that line of cases headed and illustrated by Cooper v. Commonwealth, 106 Ky. 909, 51 S. W. 789, 59 S. W. 524, 21 Ky. Law Rep. 546, 45 L. R. A. 216, 90 Am. St. Rep. 275, does not militate against these conclusions. In the Cooper case, we held that an accused, acquitted of the offense of which he had been charged, could not be convicted for perjury because of the testimony he had given in the trial of the offense for which he stood indicted; his acquittal being res adjudicata of the truth or falsity of the charge in the indictment. The Teague case, in overruling the Cooper case and the line which followed it, held that the acquittal or conviction was not res adjudicata when the accused was later put on trial for perjury because of the testimony he had given in his first trial. The reason given in the Teague case for this holding is that it is the rule everywhere that a judgment obtained by fraud is not conclusive, and the means by which it was secured may be reinvestigated and a different result reached, even in a collateral attack when the wrong cannot be corrected by appeal. The Teague case, points out that, in a criminal case, a judgment of acquittal, although obtained by fraud, cannot be reopened on an appeal or otherwise, and that, were it not permitted that the accused should be prosecuted for perjury in the obtention of his acquittal, he could commit two crimes against the commonwealth; one by the offense with which he is charged in the prosecution in which he gave false evidence, and the other, the crime of false swearing, and go free of punishment in each. The court said it would not tolerate such a condition.

Further in the Teague case, the question involved was whether the acquittal of the offense for which the accused had been indicted had been procured by false testimony. If so, then the accused was guilty of false swearing for which he was then being tried. But in the case before us, Bessie Spivey was tried under the first indictment for false swearing for the alleged offense of giving false testimony in Richardson's first trial, and it

was held by the jury that the testimony which she had given in Richardson's first trial was true. Under the second indictment for false swearing, Bessie Spivey was tried, not for having procured her acquittal on her first trial for false swearing by giving in that trial false testimony, but for having again testified in Richardson's behalf that which a jury impaneled to decide the very issue of its truth or falsity had held to be true. The Teague case is not controlling, but the principles of res adjudicata hereinbefore discussed are, and, when applied, fully justified the trial court in directing the peremptory instruction it did. The law is so certified.

Whole court sitting.