THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. BROOKLYN AND QUEENS TRANSIT CORPORATION, Respondent.

Submitted April 11, 1940; decided July 24, 1940.

*Charles P. Sullivan, District Attorney (Edmund C. Rowan* of counsel), for appellant. The maintenance of a public nuisance by the defendant was established beyond a reasonable doubt. (*People* v. *High Ground Dairy Co.*, 166 App. Div. 81; *People* v. *Borden's Condensed Milk Co.*, 165 App. Div. 711; *People* v. *Hess*, 110 Misc. Rep. 76; *People* v. *Kings County Iron Foundry*, 209 N. Y. 207; *People* v. *Kingston*, 177 App. Div. 376; *People* v. *Hoffman*, 118 App. Div. 862; 189 N. Y. 561; *People* v. *Weeks*, 172 App. Div. 117; *People* v. *Vandewater*, 224 App. Div. 767; 250 N. Y. 83; *People* v. *Tendetnick*, 237 App. Div. 9; *People* v. *Curtis*, 152 App. Div. 372; 206 N. Y. 747; *People* v. *Cooke*, 220 App. Div. 110; 248 N. Y. 597; *People ex rel. Collins* v. *Callaghan*, 28 N. Y. Crim. Rep. 377; *People* v. *Third Ave. R. R. Co.*, 30 How. Pr. 121; *People* v. *Rubenfeld*, 254 N. Y. 245.) The previous acquittal of the defendant on a similar but not the same, charge is not a bar to the present prosecution. (2 Wharton's Criminal Law [12th ed.], § 1687; *People* v. *Townsend*, 3 Hill, 479.)

*Trabue Carswell, William W. Spear* and *W. Harry Sefton* for respondent. As a matter of law, the defendant could not be guilty of the crime of public nuisance. (*Matter of City of New York [Saratoga Ave.]*, 226 N. Y. 128; *Brooklyn Hgts. R. R. Co.* v. *City of Brooklyn*, 152 N. Y. 244; *Matter of Westchester El. R. R. Co.* v. *City of Mount Vernon*, 237 N. Y. 199.) The defendant is lawfully using its own property for operation of its railroad system in the movement of its empty cars to and from the car barn, and such operation, in the absence of negligence cannot be a nuisance. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474; *Bennett* v. *L. I. R. R. Co.*, 181 N. Y. 431; *Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546; *Friedman* v. *N. Y. & H. R. R. R. Co.*, 89 App. Div. 38; 180 N. Y. 550; *People* v. *N. Y. C. & H. R. R. R. Co.*, 159 App. Div. 329; *Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 215 N. Y. 268; *Ball* v. *N. Y. C. R. R. Co.*, 229 N. Y. 33.) The question as

to the necessity for this operation was a matter to be determined by the officials of the defendant in the exercise of reasonable discretion. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 543; *Matter of N. Y. & H. R. R. R. Co.* v. *Kip*, 46 N. Y. 546; *Matter of U. El. R. R. Co.*, 113 N. Y. 275; *Matter of City of Syracuse*, 137 Misc. Rep. 632; *Long Island R. R. Co.* v. *Sherwood*, 69 Misc. Rep. 383; 205 N. Y. 1.) An abutting property owner cannot resort to the criminal law to redress a fancied private grievance. (*Fobes* v. *R. W. & O. R. R. Co.*, 121 N. Y. 505; *Kennedy* v. *Mineola, H. & F. Traction Co.*, 77 App. Div. 484; 178 N. Y. 508; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546; *L. I. R. R. Co.* v. *Garvey*, 159 N. Y. 334; *People* v. *Cooper*, 200 App. Div. 413; *People* v. *Kings County Iron Foundry*, 209 N. Y. 207; *People* v. *Transit Development Co.*, 131 App. Div. 174; *People* v. *Vandewater*, 250 N. Y. 83; *People* v. *Dayton Cleaners & Dyers Corp.*, 251 App. Div. 332.) The defendant was entitled either to a dismissal of the indictment or the direction of a verdict on the ground of acquittal on former trial for the same crime, or on the ground that the issue in this case was *res judicata* by reason of the former trial. (*United States* v. *Oppenheimer*, 242 U. S. 85; *Woodman* v. *United States*, 30 Fed. Rep. [2d] 482; *Collins* v. *Loisel*, 262 U. S. 426; *Coffey* v. *United States*, 116 U. S. 436; *Murphy* v. *United States*, 272 U. S. 630; *United States* v. *La Franca*, 282 U. S. 568; *McGrane* v. *N. Y. El. R. R. Co.*, 67 App. Div. 37; *State ex rel. Remley* v. *Meek*, 112 Iowa, 338.)

LEHMAN, Ch. J. The defendant railroad corporation operates a street railroad system in the city of Brooklyn. Some of its street car lines extend into the county of Queens. During the late hours of the night and the early hours of the morning, fewer cars are required and operated for the transportation of passengers than during the busy hours of the day. The street cars not in service during those hours cannot be left upon the tracks or upon the street without obstructing traffic. Several of the street car lines operated by the defendant have their terminal at Myrtle

avenue. Street cars not operated during the night are moved by the defendant from the terminal at Myrtle avenue along a right-of-way owned by the defendant to a storage yard or storage barn owned by the defendant, eight-tenths of a mile from the terminal. Between midnight and two A. M., sixty street cars, on the average, pass over the right-of-way from the terminal to the place of temporary storage, and between five and seven o'clock in the morning, one hundred and twelve empty cars pass in the opposite direction from the storage place to the terminal for use during the rush hours of the morning. The right-of-way is intersected by public streets and at some of the intersections traffic lights have been placed. The empty cars passing over the right-of-way, at times in procession almost continuous, stopping and starting as the traffic lights indicate, cause loud noise. There is clanging of bells and grinding of brakes and many witnesses, whose homes abut on or are in close proximity to the defendant's right-of-way, complain that the noise annoys them and disturbs their comfort, health and repose. Upon their testimony, the defendant has been convicted of maintaining a nuisance, and the court has granted an order directing the defendant to abate the nuisance within ninety days. Under that sentence the street railroad company will not be able to use its right-of-way for the passage of empty street cars not required during the night upon the lines which terminate at Myrtle avenue; nor will it be able to use as a temporary storage place for such cars the property which it now devotes to that purpose.

The defendant acquired its right-of-way through merger with another railroad company which had taken title to it in 1881. At that time the right-of-way passed through farm land. Since then the neighborhood has been built up, and many persons are now living in houses which abut on or are in close proximity to the right-of-way. The noise of the passage of the empty cars between midnight and seven A. M. annoys them and disturbs their repose, or at least a trier of the fact might so find. Because the defendant causes that noise during the night by its use of the right-

of-way for the passage of empty cars, it has been convicted upon the charge of maintaining a public nuisance. Even without that noise the right-of-way no longer enjoys the quiet of a country lane passing through farm land. The defendant corporation not only uses it for the passage of the empty cars from the terminal at Myrtle avenue but it also operates on the tracks, upon the surface of the right-of-way, a car line for the transportation of passengers, and above the surface of the right-of-way it operates an elevated railroad. Even so, a trier of the fact might find that, entirely apart from the noise caused by the operation of an elevated railroad and the operation of a street railroad for the transportation of passengers upon the right-of-way, the noise caused by the passage of the empty cars from other lines does annoy and disturb the repose of a considerable number of persons whose homes are placed on either side of the right-of-way.

Public or common nuisances at common law have been described as " such inconvenient and troublesome offences as annoy the whole community in general, and not merely some particular person." (4 Blackstone, Commentaries, p. 167.) Such nuisances " may be defined to be an offence against the public, either by doing a thing which tends to the annoyance of all the king's subjects, or by neglecting to do a thing which the common good requires. * * * But annoyances to the interest of particular persons are not punishable by a public prosecution as common nuisances, but are left to be redressed by the private actions of the parties aggrieved by them." (1 Hawkins, Pleas of the Crown, p. 692.) More recently it has been said that " A common nuisance is an act not warranted by law or an omission to discharge a legal duty, which act or omission obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects. It is immaterial whether the act complained of is convenient to a larger number of the public than it inconveniences, but the fact that the act complained of facilitates the lawful exercise of their rights by part of the public may show that it is not a nuisance to any of the public." (Stephens, Digest of Criminal Law [5th ed.], art. 197.)

The offense of maintaining a public nuisance has now been defined by the Penal Law, section 1530. That section, so far as relevant here, provides that

" A ' public nuisance ' is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:

" 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; * * *."

To establish guilt here the People must show that the defendant by " unlawfully doing an act " has caused annoyance or injury to a " considerable number of persons.' The Appellate Division has reversed the conviction and dismissed the indictment on the ground that, even assuming that the facts establish the existence of a nuisance, " the rights invaded by the maintenance of the alleged nuisance are not suffered by the complainants in their status as citizens or part of the public." (258 App. Div. 753.)

Under the express terms of the statute, annoyance to a considerable number of persons is an essential element of the offense. This court has said, however, that the expression " ' any considerable number of persons ' is used solely for the purpose of differentiating a public nuisance, which is subject to indictment, from a private nuisance " (People v. Kings County Iron Foundry, 209 N. Y. 207, 210), and in other cases this court has construed the statute as the definition of an offense to the public of a neighborhood or community in the enjoyment of its common rights and not as a definition of an offense which consists merely of injury to a large number of persons in the enjoyment of private rights not shared by the members of a community or neighborhood. Thus in the often-cited case of People v. Rubenfeld (254 N. Y. 245, 247, 249), the court, speaking through CARDOZO, Ch. J., said:

" The definition corresponds to the distinction between public and private nuisances as it stood at common law. * * * To be reckoned as ' considerable,' the number of persons affected need not be shown to be ' very great ' (People v. Kings County Iron Foundry, supra). Enough

that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community. Public is the nuisance whereby ' a public right or privilege common to every person in the community is interrupted or interfered with,' as by the obstruction of a public way (*Wesson* v. *Washburn Iron Co.*, 13 Allen, 95, 102). Public also is the nuisance committed ' in such place and in such manner that the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community, which may be properly the subject of a public prosecution ' (*Wesson* v. *Washburn Iron Co.*, supra; cf. Wood on Nuisances [2d ed], § 71, and cases cited). * * *

" We think the area of this tumult, the range of its disturbing power, is wide enough to bring it within the category of an offense to the community, or so the triers of the facts might find. Here is something more than an interference with a single dwelling or even two or three. Here is tumult so great, if the witnesses are to be credited, as to be a plague to a whole neighborhood."

Again, in *People* v. *Borden's Condensed Milk Co.* (165 App. Div. 711; affd., 216 N. Y. 658), findings of the Court of Special Sessions established that there, too, there was a " tumult so great * * * as to be a plague to a whole neighborhood," and in all the other cases cited by the People there has been interference with a public right common to every person in a neighborhood or community.

Here noise at one end of the right-of-way would not disturb persons living near the other end, almost a mile away. Each person suffers annoyance or injury only by what occurs in immediate proximity to his own home. Only because the right-of-way is long and narrow do the acts of the defendant corporation cause annoyance to a considerable number of persons, and here, unlike the cases cited by the appellant, it is not the peace and quiet of a community or neighborhood which is destroyed by unlawful conduct which affects the entire neighborhood or community, but the

complaint is directed against acts of the defendant which disturb only persons scattered along a narrow, private right-of-way.

What public right common to the members of a community has been invaded by any unlawful act or omission of the defendant railroad company or what " wrong against the community, which may be properly the subject of a public prosecution " has it committed in using its own right-of-way for the passage of empty street cars as an incident to the operation of a railroad authorized by the State? That is the question presented upon this appeal.

In determining the question presented upon this appeal, we must constantly keep in mind that we are not considering here the liability of a railroad company for damages for injury to an individual by an unreasonable user either of the public streets or of private property. The right of the individual to damages for *special injury* caused by such user has been repeatedly affirmed. Legislative authorization for the construction and operation of a railroad has never been construed as a sanction to a railroad company to perform any act incidental to the operation of its railroad in a place or manner which will cause special injury to individuals; and indeed, the Legislature has not unlimited power to grant immunity from liability for a special injury caused to an individual in his private rights by the operation of a railroad under sanction of the State and for the public benefit.

" Such roads are treated as public highways, and the proprietors as public servants, with the exemption normally enjoyed by such servants from liability to private suit, so far as concerns the incidental damages accruing to owners of non-adjacent land through the proper and skillful management and operations of the railways. * * * The immunity is limited to such damages as naturally and unavoidably result from the proper conduct of the road and are shared generally by property owners whose lands lie within range of the inconveniences necessarily incident to proximity to a railroad. It includes the noises and vibrations incident to the running of trains, the necessary emission of smoke and sparks from the locomotives, and similar annoyances inseparable from the normal and non-

negligent operation of a railroad." (*Transportation Co. v. Chicago*, 99 U. S. 635, 641; *Richards v. Washington Terminal Co.*, 233 U. S. 546, 553.) The court there was speaking of actions brought by owners of the property to recover damages which they suffered by reason of the operation of railroads. We do not now determine what evidence would be sufficient to establish a right to redress of special injury to an individual. We are considering only penal responsibility resulting from the performance by the railroad company of a public function.

In *Baltimore & Potomac R. R. Co. v. Fifth Baptist Church* (108 U. S. 317, 332) the Supreme Court of the United States drew a distinction between public and private nuisances which was later expressly approved by the same court in *Richards v. Washington Terminal Co.* (*supra*). In the earlier case it was said: " The acts that a Legislature may authorize, which, without such authorization would constitute nuisances, are those which affect public highways or public streets, or matters in which the public have an interest and over which the public have control. *The legislative authorization exempts only from liability to suits, civil or criminal, at the instance of the State;* it does not affect any claim of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large." (Italics are new.) It is interesting to note that in every judicial decision cited by the appellant where it has been held that a railroad company is guilty of an actionable wrong or creates a private nuisance by performing in an unreasonable manner or at an unreasonable place acts incidental to its public function, the court was considering the essential elements of a cause of action asserted by an individual or a group of individuals for redress or protection where there has been an invasion of *private rights*. In no case cited has a railroad company been charged with penal responsibility for a public nuisance. Even relief from special injury may be obtained only for " acts [which] were injurious and were not necessarily or reasonably incidental to the operation of the railroad at the point in question." (*Hearst v. N. Y. C. & H. R. R. R. Co.*, 215 N. Y. 268, 280; *Ball v. New York Central R. R. Co.*, 229 N. Y. 33.)

Here, the People claim that the use of the defendant's right-of-way for the passage at night, in almost constant procession, of empty cars from the terminal of its street railroad lines in Myrtle avenue to the storage yard or barn, almost a mile away, would not be a part of the normal operation of the defendant's railroad under proper and skillful management. No lack of skill or care causing unnecessary noise has been shown in connection with the passage of empty cars. Sanction of the State for railway operation includes sanction of any action reasonably incidental to the operation of a railroad. The People do not, of course, contend that it would be reasonable to require a street railroad company to keep in operation during the hours from midnight till early morning, when the tide of traffic is at low ebb, all the street cars required for transportation of passengers during the rush hours. Concededly, the defendant acts reasonably and properly in taking from its street car lines, during the quiet hours of the night, many of the cars which it operates during the busy hours of the day and in storing these cars upon its own property off the street. Concededly, too, passage of the empty cars from the terminal of the railway lines to premises used by the railroad company for storage and reasonably suited to that purpose, is a necessary or reasonable incident of the operation of the railroad. The right of the railroad company to use its right-of-way for that purpose is challenged only upon the narrow ground that the railroad should store the empty cars at a point which would be nearer the terminal and to which the empty cars could pass with less annoyance to those living in the neighborhood or, at least, with annoyance to fewer people. The People point out that the railroad company owns other premises which, the People claim, could more reasonably be used for the storage of the empty cars and which, indeed, were for a long time used for such purpose.

The evidence shows the size and physical condition of the premises which the People urge should be used for the storage of these empty cars. Officers of the defendant corporation, responsible for its operation, testified that these

premises, though formerly used for storage of cars, were not suitable for that purpose, and the People produced no expert testimony to contradict this conclusion but urge that the jury might, without the assistance of expert witnesses, reach the conclusion that the railroad company is acting unreasonably in taking its empty cars along its right-of-way for a distance of almost a mile, past dwelling houses, instead of acquiring or using premises nearer its terminal. The State of New York has established official bodies charged with the responsibility of regulating the operation of railroads and other public utilities. No such body has found that the use of its right of way by the defendant is unreasonable or unlawful, but upon this appeal the People urge that a railroad company may be charged with the maintenance of a public nuisance and a court of criminal jurisdiction may require the abatement of the nuisance upon a finding of a jury that, upon its own property, the railroad company conducts activities required in the operation of the railroad but which are not reasonable *at that point* because, in the opinion of the jury, the railroad company might conduct them elsewhere with less annoyance to private citizens.

Though in this case the jury found that the defendant acted unreasonably in using its right-of-way for passage of its empty cars and, for that reason, maintained a nuisance from July 1, 1937, to February 10, 1938, it appears that in the Court of Special Sessions the defendant was acquitted upon a charge of maintaining, at the same place, a public nuisance from August 2, 1934, to August 2, 1936, yet it is not disputed that in the interval there has been no substantial change of conditions. Acquittal upon the charge of maintaining a nuisance prior to August 2, 1936, is, of course, not a bar to prosecution upon a charge of maintaining a nuisance thereafter, yet it may in proper case constitute an adjudication of an issue of fact or of law necessarily determined by the earlier judgment, and parlous indeed will be the state of a railroad company if a jury may convict the railroad company of maintaining a public nuisance because, on its own property, it performs without

negligence an act incidental to the operation of its railroad but which, in the opinion of the jury, should be performed at some other point where it might cause less annoyance to others; and if, in addition, successive juries may pass upon the question until one jury finds that the railroad is acting unreasonably.

The State has ample power to regulate the performance by a railroad company of its public functions and every act incidental to such functions, and the State has not provided that, where no regulatory body has given direction for the performance of its functions in appropriate manner and at an appropriate place, a railroad company may be charged with the crime of maintaining a public nuisance because it performs some incidental parts of its public function in a manner and at a place which it deems suitable, though a trier of the facts might reach other conclusion. Injury to individuals in their private rights does not constitute a public nuisance and no unlawful injury to the public results from an act of the railroad company in the performance of its public function with the sanction of the State and in manner and at a place not prohibited by any regulatory body.

The public officials charged with regulation of the operation of the defendant's railroad might perhaps find that the defendant is using for the storage of its empty cars the space which is best suited for that purpose and that a direction that the company may not use its right-of-way for passage at night of the empty cars would cripple the service which the defendant must render the public, yet a decision affirming the judgment of conviction would mean that a jury of laymen might determine whether a railroad acts unreasonably and in disregard of public rights when it performs its functions in manner to which the responsible public officials have not objected and which, indeed, such officials might deem in the public interest.

The order should be affirmed.

LOUGHRAN, FINCH, SEARS, LEWIS and CONWAY, JJ., concur; RIPPEY, J., taking no part.

Order affirmed.