Walter R. Hart, J.
Defendant appeals from five separate judgments of conviction rendered after trial for violations of certain licensing provisions set forth in article 28 of chapter B32 of the Administrative Code of the City of New York, relating to “ going out of business ” sales at its premises at 1122 Kings Highway, Brooklyn, New York. The actions were jointly tried on June 8, 1961 and the maximum sentence of a $500 fine on each complaint was imposed, which fine has been paid.
Four of the charges were for alleged violations of section B32-206.0, which provides: “ § B32-206.0 License required.— It shall be unlawful for any person to publish or conduct any sale of the type herein defined without a license therefor and a license issued pursuant to this article for a sale advertised as a ‘ branch store discontinuance sale ’ shall apply only to, and the sale shall he conducted only at the premises of the branch which is being discontinued.” (Emphasis supplied.)
*866 The terms “ sale,” “ publish ” and “ advertising ” are defined in section B32-205.0:
“ 1. ‘ Sale.’ A sale or an offer to sell to the public goods, wares, and merchandise of any and all kinds and descriptions on hand and in stock in connection with a declared purpose, as set forth by advertising on the part of the seller that such sale is:
“ a. Anticipatory to the termination, closing, liquidation, wind-up, discontinuance, removal, conclusion, or abandonment of the business, and advertised in the following phrases and in any other phrase or phrases of like or similar language which reasonably convey to the public that the sale is being conducted for such purpose: ‘ going out of business sale,’ ‘ trustee’s sale,’ ‘liquidation sale,’ ‘executor’s sale,’ ‘administrator’s sale,’ ‘ insolvent sale,’ ‘ mortgage sale,’ ‘ adjustor’s sale,’ ‘ receiver’s sale,’ * loss of lease sale,’ ‘ forced out of business sale,’ ‘ branch store discontinuance, sale,’ ‘ removal sale,’ ‘ warehouse removal sale. ’
# # *
“ 2. ‘ Publish, ’ ‘ publishing, ’ ‘ advertisement, ’ ‘ advertising. ’ Any and all means of conveying to the public notice of sale or notice of intention to conduct a sale, whether by word of mouth, by newspaper advertisement, by magazine advertisement, by handbill, by written notice, by printed notice, by printed display, by billboard display, by poster, by radio announcement, by television announcement, and any and all means including oral, written or printed.”
The fifth complaint, alleging a violation of section B32-215.0, . will be discussed infra.
From the stipulations and evidence in the record it appears that on October 20, 1961 the Commissioner of Licenses issued three separate “going out of business sale” licenses for the period from October 23, 1961 to November 21, 1961 for each of the three separate stores owned by defendant, one of which was located on Kings Highway in Brooklyn, and the others located in New York and Bronx Counties. The licenses were issued pursuant to applications in the form prescribed by section B32-207.0, which requires, inter alia, a statement as to the means to be employed in publishing the sale, including the text of any and all proposed advertising and an itemized list of the goods to be offered for sale and where and from whom such stock was purchased. After a hearing the License Commissioner on November 17, 1961 by letter addressed to defendant revoked the license, the reason therefor not appearing in the evidence. It is to be observed that pursuant to section B32-208.0, the Com *867 missioner may issue such license for a period not exceeding 30 days. By section B32-209.0 it is provided that upon proof by the licensee that the stock itemized in the original application has not been entirely disposed of, the Commissioner in his discretion may renew the license for two successive 30-day periods.
Three of the four charges that the defendant violated section B32-206.0 which requires a license for conducting a “going out of business sale ’ ’ are predicated on the fact that defendant placed advertisements in the World-Telegram on February 6, 1962, in the New York Post on February 8, 1962, and in the New York Mirror on February 9, 1962, which the People claim are advertisements of a sale “ anticipatory to the termination, closing, liquidation * * # of the business.” While not advertised in any of the specific phrases set forth in the statute, it is contended they were nevertheless ‘1 phrases of like or similar language which reasonably convey to the public that the sale is being conducted for such purpose.” The convictions on these charges were based on exhibits consisting of copies of these advertisements together with stipulations and testimony of Inspectors of the License Department that on the dates the advertisements appeared the Inspectors visited defendant’s premises on Kings Highway and saw “ sales actually in progress.
Defendant urges that the text of the advertisements was not of a “going out of business” nature and that since it was acquitted of the “same charge” in New York and Bronx Counties with respect to the same advertisements, that for the single act of placing the advertisements it is being placed in double or triple jeopardy by the proceedings in Kings County. It is the position of the prosecution that the gravamen of the charge is not the advertisements per se but the acts of conducting the sales here and that these are different from those sales held in New York and Bronx Counties.
In this narrow aspect of the case the contention of the People is valid. The acts of the sales are different from those in New York and The Bronx, and charging defendant with these different acts is not interdicted by the Federal and State constitutional provisions against double jeopardy nor is defendant afforded immunity from prosecution by section 1938 of the Penal Law (People v. Fennell, 10 A D 2d 78; People ex rel. Maurer v. Jackson, 2 N Y 2d 259; People ex rel. Wasmund v. Wallack, 25 Misc 2d 277; People v. Miller, 34 Misc 2d 611). It must be observed, however, that in its contention the People lose sight of the fact that one of the complaints charged a *868 violation of the statute on February 8, 1962 in that defendant “ did unlawfully advertise a sale in the New York Post conveying the impression to the public that said sale is anticipatory to the termination of the business at the aforesaid address, without having a license therefor.” There is no allegation in the complaint that the act of conducting a “ sale ” occurred. However, with respect to all of the charges of the violation of section B32-206.0 stemming from these three advertisements, the statute in its provision 1 ‘ It shall be unlawful for any person to publish or conduct any sale of the type herein defined without a license therefor ” necessarily includes the definition of a sale set forth in section B32-205.0 and clearly indicates that an advertisement to that effect is an integral part of the offense. If, therefore, the advertisement for a “ sale ” does not fall within the definition of the statute, defendant is not guilty of a violation thereof.
By the decisions in Bronx and New York Counties acquitting the defendant, the prosecution is “ collaterally-estopped ” from asserting that the advertisements are in ‘ ‘ phrases of like or similar language which reasonably convey to the public that the sale is being conducted ” for the purpose of terminating defendant’s business. While the records of the proceedings in Bronx and New York Counties are not before us, the People do not dispute that the identical advertisements constituted the bases of those prosecutions, but upon the trial and here on the appeal rests its position on the theory that the sales were “ acts” different from those prosecuted in the other counties. The trial court in disposing of defendant’s contention of double jeopardy merely stated that it was not bound by what its colleagues in the other counties had held, that stare decisis was not applicable and found that the advertisements were such as to cause a layman to believe that the sales were being held to permit defendant to go out of business.
The doctrine of collateral estoppel as distinguished from double jeopardy or its civil counterpart, res jtidicata, relates to a specific issue or issues as distinguished from all of the issues in a prior litigation. Whereas in res judicata, which requires an identity of parties (or their privies), all issues actually raised or which could have been raised are deemed conclusively adjudicated, for the doctrine of collateral estoppel to apply there need not necessarily be an identity of parties (or their privies), but same may also be asserted defensively to actions to which they were strangers (Israel v. Wood Dolson Co., 1 N Y 2d 116). The distinction between the doctrines is clarified in the New York University Law Review (vol. 36, pp. 1160-1161):
*869 “ Collateral estoppel, however, applies only when the action in the subsequent suit is on a different cause of action from that asserted in the first proceeding, and it applies to issues of fact or law rather than to causes of action.
‘ ‘ When the cause of action is identical with that of the prior suit, a party is prevented from raising not only matters actually litigated in a former suit, but also all matters which might have been litigated. Thus, a plaintiff may not assert a cause of action which differs in form, but not in substance, from that alleged in a previous suit merely by bringing up new issues which might have been determined in the prior suit.
‘ ‘ Where, however, the cause of action is not the same, the estoppel operates only as to those matters litigated of necessity and actually determined, and perhaps also to matters necessarily inferred from such determinations.”
The philosophy underlying the doctrine of collateral estoppel and its application is expressed in the same Law Review article as follows (pp. 1158-1159): “ The fact that courts in New York have tended to expand the scope of the doctrine in recent years suggests additional reasons for its application. Crowded court calendars do not permit litigants the luxury of contesting issues twice. Increased costs of litigation add emphasis to the belief that defendants should not be twice vexed on the same cause. Another probable factor is the unstated recognition that the dignity of the processes of the law is attacked each time a party relitigates a matter that has once been decided on the merits by a competent court.”
The distinction between double jeopardy and collateral estoppel and the applicability of the latter doctrine to criminal cases is lucidly set forth by Mr. Justice Farrell in his opinion in People v. Boderman (34 Misc 2d 497, 505-507). His observations and the fruits of his research merit repetition here: ‘1 The applicability of the collateral-estoppel principle to the criminal law is accepted by the New York courts (People v. Brooklyn & Queens Tr. Corp., 283 N. Y. 484, 496). Based upon the precept 1 that a question once tried out should not be relitigated between the same parties or their privies ’ (Commissioners of State Ins. Fund v. Low, 3 N Y 2d 590, 595) the doctrine is aptly described by one of the writers as ‘ that aspect of res judicata concerned with the effect of a final judgment on subsequent litigation of a different cause of action involving some of the same issues determined in the initial action. ’ (Developments in the Law — Res Judicata, 65 Harv. L. Rev. 818, 840 [1952]). Commonly essential to successful invocation of either the collateral-estoppel or the parent-doctrine, are ‘ an existing final judgment rendered *870 upon the merits by a court of competent jurisdiction ’ (Israel v. Wood Dolson Co., 1 N Y 2d 116, 118, supra) in a prior action between the parties, upon a matter within its jurisdiction and directly determining a question or fact ‘ distinctly put in issue ’ and not merely ‘ collaterally in question ’ (2 Freeman, Judgments [5th ed.], pp. 1321-1322). * * * But whereas the res judicata tenet extends the binding effect of the prior adjudication to ‘ points and matters litigated and adjudicated in the first suit or which might have been litigated therein ’ (Israel v. Wood Dolson Co., supra) and forbids their relitigation in a subsequent action upon substantially the same cause, the collateral-estoppel principle intervenes when ‘ the two causes of action are different, not in form only ’ and ‘ [t]he estoppel is limited # * to the point actually determined ’ (Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304, 306, 307). As compacted in that field, the general rule is ‘ that where an issue of fact essential to the judgment is actually litigated and determined by a valid final judgment, the determination is conclusive between the parties and their privies ’. More specifically, if the prior adjudication of the issue of fact ‘ was a finding essential to the judgment, from which the resolution of the ultimate legal issue necessarily followed ’ and thus ‘ a necessary step in arriving at the final judgment ’ it is ‘ conclusively established between the parties * * * in any later suit If it negates a fact essential to the liability of the party sought to be charged therewith in the second suit, i.e., if 1 [t]he resolution of the ultimate legal issue ’ in the later action ‘ also necessarily follows from the * * * factual finding ’ the subsequent suit must fail (Hinchey v. Sellers, 7 N Y 2d 287, 293, 296, supra). Within these boundaries, collateral estoppel serves the administration of both the civil and the criminal law (Harris v. State, 193 Ga. 108, 120-121, supra; Commonwealth v. Spivey, 243 Ky. 483, 486-487; State v. Latil, 231 La. 551, 567-568; Commonwealth v. Di Stasio, 297 Mass. 347, 357-368; State v. Barton, 5 Wn. [2d] 234, 240) an ‘ [a] cquittal upon the charge * * * may in proper case constitute an adjudication of an issue of fact or of law necessarily determined by the earlier judgment ’ (People v. Brooklyn & Queens Tr. Corp., 283 N. Y. 484, 495, supra). As in the civil law, if the prior adjudication belies a fact essential to the defendant’s guilt of the offense charged in the second prosecution, the earlier verdict precludes conviction thereof (Sealfon v. United States, 332 U. S. 575, 578-579, 580) and justifies a summary disposition by dismissal of the indictment (Hinchey v. Seller, 7 N Y 2d, supra, p. 289) if the record dependably establishes that the critical fact was adjudicated in the defendant’s *871 favor. It is in the effort to identify the issues previously determined that the most conspicuous difficulty is encountered. ’ ’ (See, also, Lugar, Criminal Law, Double Jeopardy and Bes Judicata, 39 Iowa L. Bev. 317, 334 [1952]; “ the solar plexus of Bes Judicata Criminal” Glershenson, Bes Judicata in Successive Criminal Prosecutions, 24 Brooklyn L. Bev. 12, 32 [1957]; 25 Brooklyn L. Bev. 33 [1958].)
The applicability of the rule of collateral estoppel in criminal cases was recognized in People v. Lo Cicero (17 A D 2d 31, 34 [2d Dept.]), where the court stated: “ The essence of the rule of collateral estoppel is that a question once tried should not be relitigated between the same parties or their privies (Hinchey v. Sellers, 7 N Y 2d 287). It is really the rule of res judicata applied to criminal cases (see Abbate v. United States, 359 U. S. 187, 200, supra, Hoag v. New Jersey, 356 U. S. 464, 471). The difference is that res judicata applies to questions that were or might have been litigated, whereas collateral estoppel applies only to questions that were actually litigated (Bestatement, Judgments, § 68), primarily because the ‘ causes of action ’ in different prosecutions are different. ’ ’
It follows, therefore, that the People perforce of the doctrine of collateral estoppel were, by reason of the prior acquittals in the Counties of Bronx and New York, precluded from asserting that the advertisements of the sales that were related to them fell within the definition of the statute.
Moreover, from a fair reading of the advertisements, it may be concluded as a matter of law that they were not phrased in language so as to reasonably convey to the public that the sales were being conducted in conjunction with defendant’s termination of the enterprise. The advertisement in the World-Telegram of February 6,1962 reads as follows:
After 36 Tears of Value-Giving . .
LAST 5 DAYS!
Of The Greatest Clothing Sale in our History!
[while LAST 5 DAYS appears in larger print than the other two lines, the latter were still in print that was rather large]
FINAL REDUCTIONS [large print]
Merchandise has been regrouped and repriced to give our customers of 36 years the buys of their life!
[After a description of the suits and coats being sold there appears the statement] This is your chance of a lifetime to wear fine clothing at incredible prices! Come by car — bus — train — but hurry!
(Underneath appears the name of the defendant and the addresses of its three stores.)
*872 The advertisements in the New York Post of February 8, 1962 and in the New York Mirror on February 9, 1962 were substantially the same as the foregoing except that the words “ Sale ends Lincoln’s Birthday February 12 ” are added, and the number of “ Last — Days ” is reduced.
We are not in accord with the conclusion of the court below that the phraseology of these advertisements is such as would reasonably convey to the public that the sales were being conducted for the termination of its enterprise by defendant. There is at least a reasonable doubt that these advertisements would convey such a meaning. We would accordingly dismiss the three complaints predicated on these newspaper advertisements.
The fourth complaint which charges a violation of section B32-206.0 was originally lodged against defendant’s manager, Bernard Pollack. He was tried in absentia. After he had been found guilty, defendant, with the consent of the prosecutor, was substituted in his place. The conviction in this case was predicated upon testimony of an Inspector of the License Department who testified that on February 5,1962, while defendant conducted business at its premises, it maintained certain signs in its windows. Photographs of these signs were marked in evidence. The one in the front window reads:
[Large Type]
CHOICE OF THE HOUSE
LAST
[In Larger Type]
7
DATS
The second sign on a side window reads:
[Large Print] THE GREATEST SALE 36 Y
SALE
Choice
of the House
LAST 7 DAYS
Imported — Handwoven
Harris Tweed Overcoats $25
None Higher
Regularly to $135
It is to be observed that the portion of the sign in the side window appearing after “ 36 Y” is not observable on the photograph. When defendant’s counsel questioned the witness as to the remainder of the language on the sign, an objection by the prosecution to the question was sustained. Over defendant’s objection that the photograph did not completely portray the sign, the photograph was marked in evidence.
*873 It is our conclusion that the signs above described did not, in contravention of the statute, advertise in language which can be said to “ reasonably convey to the public ” that the sale was “ for the purpose of going out of business.” The signs, as evidenced by the photographs, merely state that there was a “ Choice of the House Sale.” The words “ Last 7 Days ” do not necessarily connote the defendant was terminating its enterprise. It may not be said, therefore, that the defendant’s guilt on this charge was established beyond a reasonable doubt. The judgment of conviction relating to this complaint should accordingly be dismissed.
The fifth judgment of conviction against the defendant was predicated on a complaint charging defendant with a violation of section B32-215.0 which provides: “ § B32-215.0 Resumption of business.— No person shall upon the conclusion of any sale as defined in subdivision a of section B32-205.0 of this article, continue to conduct a business or business operation of the same or similar nature to that for the discontinuance of which such license was issued at the same premises nor, within one year after the conclusion of such sale resume such business at such same premises.” (Emphasis supplied.) The complaint is predicated on the theory that since defendant was still conducting business at the same premises on January 24, 1962, after the license had been revoked, that it violated this statute. This contention ignores the fact that there had been no conclusion of the sale originally licensed. On the contrary, the License Commissioner by his revocation of defendant’s license on November 17, 1961, prior to its expiration, prevented a conclusion of the sale. There is no statute which forbids the resumption or continuance of business after a revocation, as distinguished from the expiration of the license. The judgment predicated on this complaint should be reversed and the complaint dismissed.
The judgments should be reversed, the complaints dismissed and fines remitted.
Di G-iovanna and Brown, JJ., concur.
Judgments reversed, etc.