# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DESHAWN ANDREW BOYLAN,

        Defendant-Appellant.

UNPUBLISHED
April 24, 2018

No. 335556
Muskegon Circuit Court
LC No. 16-000772-FC

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), arising from Robert Gee's shooting of Jacob Rameau, who pursued defendant after defendant stole a car. On appeal, defendant argues that the prosecution presented insufficient evidence that he caused Rameau's death, that his trial counsel was ineffective, and that the trial court did not properly instruct the jury on the elements of felony murder. Although defendant's trial was not perfect, we discern no errors requiring relief and affirm.

## I. BACKGROUND

In the early morning hours of June 26, 2014, Robert Gee shot and killed Jacob Rameau. The evening before, Rameau and his brother, Christopher Hotz, went to DJ's Pub and Grill in Muskegon. Hotz parked his car in the lot but left his windows rolled down and his keys inside. Rameau drove separately on a motorcycle and parked nearby. That same evening, a group of men, including defendant and Gee, decided to visit DJ's Pub. The driver of their party, Harry McBride, parked next to Hotz's vehicle in the parking lot.

When defendant's group left, McBride, Gee, and two other men returned to McBride's car. Defendant delayed, looking inside nearby vehicles. He entered Hotz's car, found the keys, started the engine, and pulled away from the bar. McBride did not want to follow defendant, but testified that Gee pressured him to do so. By this time, Hotz and Rameau had exited the bar and saw defendant driving away in Hotz's car. Rameau jumped on his motorcycle and took up chase while Hotz called 911 to report the theft.

Defendant, followed by McBride, followed by Rameau drove along at high speeds. Eventually, Rameau passed McBride and pulled alongside defendant who had stopped abruptly on a residential street. Gee pulled out a gun, leaned out the window, and fired several shots at

-1-

Rameau. Rameau pulled away and McBride pulled alongside defendant. McBride heard defendant state that he had intended to "pop" Rameau before Gee started shooting.[1] Gee then fired another shot in the motorcycle's direction.

Eventually, defendant abandoned the stolen car. He and Gee searched it, stole various items, and then wiped the vehicle to remove any fingerprints. A local resident found Rameau lying on her front yard next to his motorcycle. She called 911, but Rameau died before he could be transported to the hospital. The next day, defendant, Gee, and two other men travelled to a pawn shop to sell the items they stole.

Defense counsel argued that there was no evidence that defendant aided and abetted Gee in murdering Rameau or had any intent to harm Rameau. The jury rejected this defense and convicted defendant of felony murder based on the underlying felony of larceny. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence to establish that he was the factual and proximate cause of Rameau's death because Gee's decision to shoot Rameau was not foreseeable.[2] We review de novo a challenge to the sufficiency of the evidence, examining the "record evidence . . . in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). We must resolve all conflicts in the evidence in favor of the prosecution. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *Id*.

Generally, the prosecution must prove that a defendant's act was both the factual and proximate cause of the victim's death. See *People v Feezel*, 486 Mich 184, 194; 783 NW2d 67 (2010). "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Id*. at 194-195.

> Proximate causation is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. If the finder of fact determines that an intervening cause supersedes a defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken, proximate cause is lacking and criminal liability cannot be imposed. Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. Ordinary negligence is considered reasonably foreseeable, and it is thus not a

---

[1] There was evidence that defendant was also carrying a handgun that night.

[2] Gee was convicted of first-degree murder after a bench trial. See *People v Gee*, unpublished per curiam opinion of the Court of Appeals, issued March 14, 2017 (Docket No. 326634).

superseding cause that would sever proximate causation. In contrast, gross negligence or intentional misconduct on the part of a victim is considered sufficient to break the causal chain between the defendant and the victim because it is not reasonably foreseeable. [*Id.* at 195 (quotation marks and citations omitted).]

These causation principles apply to first-degree felony murder. Felony murder is a murder committed "in the perpetration of, or attempt to perpetrate" various felonies, including "larceny of any kind." MCL 750.316(1)(b). By covering a murder committed "in the perpetration of" an enumerated felony, the Legislature intended to criminalize deaths caused "during the uninterrupted chain of events surrounding the commission of the predicate felony." *People v Gillis*, 474 Mich 105, 121; 712 NW2d 419 (2006). However, there must be a sufficient relationship between the homicide and the predicate felony to establish that the homicide was "incident to the felony and associated with it as one of its hazards." *Id.* at 127 (quotation marks and citation omitted).

A jury could find defendant guilty of felony murder despite that he did not inflict the fatal injury. Rather, when a person "sets in motion a chain of events which were or should have been within his contemplation when" he acted, that person will "be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act." *People v Podolski*, 332 Mich 508, 515-516; 52 NW2d 201 (1952) (quotation marks and citation omitted). The question for the jury is not whether the defendant directly caused the homicide, but rather whether the homicide had a causal relationship with the defendant's commission of the predicate felony. See *Gillis*, 474 Mich at 127; *Podolski*, 332 Mich at 515-516; see also *People v Carines*, 460 Mich 750, 769; 597 NW2d 130 (1999) ("We wish to emphasize that we have never held that a defendant must participate in the actual killing to be guilty of felony murder. To the contrary, our case law establishes that, in certain circumstances, a defendant may be held responsible for the actions of a co-felon."); *People v Smith*, 56 Mich App 560, 567; 224 NW2d 676 (1974) (rejecting the contention that the jury had to find that the defendants caused the victim's death and stating that the jury only had to find that the killing was the direct cause or result of the perpetration of the felony).

The prosecution presented evidence that defendant left DJ's pub with Gee and looked inside parked vehicles. Surveillance footage showed defendant entering Hotz's car. Defendant's friends testified that defendant boasted to Gee when he found Hotz's keys. The testimony suggested that defendant formed the intent to steal Hotz's car at that moment and that his companions were aware of what he was doing. McBride also testified that Gee cajoled him into following defendant as he drove away. The jury could infer that defendant and Gee were working in concert or at least had some understanding that Gee would follow defendant. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) (stating that, if evidence is relevant and admissible, it does not matter that it gives rise to multiple inferences or that the inferences give rise to further inferences).

The surveillance footage revealed that Hotz and Rameau caught defendant in the act. The jury could infer from that evidence that defendant then knew the jig was up. At a minimum, the evidence regarding the ensuing chase established that defendant would have been aware that he was being followed when Rameau caught up with him while driving his motorcycle at a high

rate of speed. McBride caught up to defendant at the intersection when the motorcyclist passed him and proceeded through the light in hot pursuit of defendant. The chase scenario from that point on suggested that defendant was trying to lose Rameau. The jury could also find that defendant knew that Gee and his companions were following right behind.

The testimony showed that defendant sped off down Hackley Street at a high rate of speed and that Rameau was undeterred. Rameau passed other cars and proceeded through the light after defendant. Defendant then turned onto Jefferson and stopped rather abruptly, within a few houses of the corner. The jury could infer that defendant pulled over because he intended to confront Rameau or wanted to give his companions time to catch up and confront him.

McBride and another man in McBride's car, Everett Glover, both testified that they knew Gee had a gun. Glover also testified that he saw defendant with a gun earlier in the day. Glover's testimony suggested that it was common knowledge among those who knew Gee that he carried a gun. If Gee's friends and associates—McBride and Glover—knew that he carried a gun, a reasonable jury could infer that Gee's brother-in-law, defendant, also possessed this knowledge. Accordingly, the jury could infer that defendant pulled over to enable Gee to catch up and assist him against his pursuer. When Gee arrived, he did just that—he pulled his gun and fired at Rameau.

Even if defendant did not know that Gee had a gun before stealing the car, he would have realized that Gee shot at Rameau. If defendant did not intend to confront Rameau or did not agree with Gee's actions, he had every opportunity to express his disagreement when McBride pulled up next to him after Gee fired the first shots. Defendant could have abandoned the stolen car then and fled on foot, he could have told Gee to let Rameau go, he could have expressed anger at the shooting, or done any number of things to communicate that he wanted no part in Rameau's attack. Instead, defendant indicated that he personally was going to "pop" Rameau. McBride then continued down the street, and Gee shot at Rameau again. Given the pathologist's testimony about Rameau's injuries, a reasonable jury could find that Gee's final shot was fatal, a shot fired after defendant told Gee that he too had wanted to "pop" him.

Defendant proceeded to speed past McBride, and McBride followed. Defendant eventually found a place to jump ship, and Gee helped him search the stolen car for valuables. Again, there was no evidence that defendant demurred. Instead, he and Gee continued to act in concert to complete the theft and get away. From the totality of this evidence, a reasonable jury could infer that defendant and Gee acted in concert to take the car and anything within it of value from the very start.

The evidence showed that defendant's theft of Hotz's car led directly and foreseeably to Rameau's murder. A car thief generally knows that there is a risk that a witness to the theft or a police officer may pursue him and that the pursuit itself places the pursuer at risk of harm. In this case, there was also evidence that defendant knew his companions had followed him and knew that Gee was armed. A reasonable jury could infer that defendant pulled over to orchestrate a confrontation with Rameau and ensure his escape. Given the testimony that defendant and Gee both had guns, it was foreseeable that one or both men would use their weapons against anyone who posed a threat to their escape. Consequently, Gee's decision to fire at Rameau was a natural and foreseeable consequence of the chain of events that defendant set in

-4-

motion when he stole Hotz's car, fled from Rameau, and then stopped to confront Rameau. There was no unforeseen break in the causal chain relieving defendant of responsibility and we may not interfere with the jury's conviction.

### III. INEFFECTIVE ASSISTANCE

Defendant next argues that his trial counsel was ineffective. Because the trial court did not hold an evidentiary hearing on defendant's claim of error, there are no factual findings to which this Court must defer and our de novo review is for mistakes apparent on the existing record. *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012), rem on other grounds 493 Mich 864 (2012).

" 'Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise.' " *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009), quoting *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008) (quotations omitted).

> To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).]

"[T]he defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant first asserts that defense counsel was unprepared for trial. A defendant has the right to have counsel prepare, investigate, and present all substantial defenses. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Defendant does not identify any particular act or omission related to defense counsel's purported lack of preparation that prejudiced his defense and therefore has not established the factual predicate of his claim. See *People v Caballero*, 184 Mich App 636, 641-642; 459 NW2d 80 (1990) (stating that the defendant must show that the lack of preparation resulted in "counsel's ignorance of valuable evidence which would have substantially benefited" the defense). In any event, it is evident from defense counsel's voir dire of the prospective jurors, his aggressive cross-examination of the witnesses, and his opening and closing statements that counsel *was* prepared to try this case.

Defendant next argues that counsel was ineffective in failing to file a motion to quash the information on the ground that defendant's decision to unlawfully drive Hotz's car away did not foreseeably cause Rameau's death. As already discussed, the prosecutor had sufficient evidence to establish that defendant's commission of or attempt to commit a larceny was the cause in fact and proximate cause of Rameau's murder. Counsel is not ineffective for declining to file a frivolous or futile motion. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

Defendant also contends that counsel should have moved to quash on the ground that the charge violated the doctrine of res judicata and amounted to a piecemeal prosecution in violation of due process. Specifically, the prosecution initially charged defendant only of stealing Hotz's car. After defendant pleaded guilty to unlawfully driving away a vehicle, the prosecution charged defendant with murder.

Our Supreme Court has applied issue preclusion to criminal prosecutions. See *People v Albers*, 137 Mich 678, 685; 100 NW 908 (1904). In such cases, the criminal defendant may prevent the prosecution from relitigating a fact that was necessarily decided in his favor during a previous trial. *Id.*; see also *Yeager v United States*, 557 US 110, 119; 129 S Ct 2360; 174 L Ed 2d 78 (2009) (recognizing that the Double Jeopardy Clause prohibits the government from relitigating any issue that was necessarily decided by the jury's acquittal in a prior trial). And this Court has recognized that res judicata may apply in the context of a criminal proceeding when "there has been an adjudication on the merits." *People v George*, 114 Mich App 204, 210; 318 NW2d 666 (1982).

Defendant's plea-based conviction was a final adjudication on the merits and precludes retrial on the elements of unlawfully driving away a motor vehicle. MCL 750.413 proscribes this offense as follows: "Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony. . . ." However, the offense "is not a larceny because it does not require an intent to permanently deprive a victim of property." *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993). Larceny requires proof that the defendant intended to "deprive the owner of" the stolen property. *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016). By accepting defendant's guilty plea to unlawfully driving away a motor vehicle, the court was not required to consider whether defendant intended to permanently deprive Hotz of his property and therefore did not find that defendant had not committed a larceny. Accordingly, defendant's trial for felony murder based on the underlying charge of larceny was not precluded on res judicata grounds.

Moreover, the doctrine of res judicata does not preclude piecemeal prosecution. The "doctrine of res judicata was judicially created in order to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999) (quotation marks and citations omitted). The purpose of the doctrine is to promote fairness. *Id.* at 383. However, it cannot be applied to subvert the intent of the Legislature. *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 630; 808 NW2d 471 (2010). And the Legislature has granted prosecutors broad discretion "to investigate criminal wrongdoing, determine which applicable charges a defendant should face, and initiate and conduct criminal proceedings." *Fieger v Cox*, 274 Mich App 449, 466; 734 NW2d 602 (2007). Additionally, our Supreme Court has not applied res judicata broadly in the criminal context; instead, it has limited it to facts and claims that were necessarily decided in the first litigation. *Albers*, 137 Mich at 685; see also *People v Sharp*, 9 Mich App 34, 39-40; 155 NW2d 719 (1967) (applying res judicata and holding that the trial court erred when it allowed the question of first-degree murder to go to the jury after the defendant's conviction of assault with the intent to murder because the most severe charge of which the defendant could have been found guilty

after the previous conviction was manslaughter). Given the state of the law, defense counsel was not ineffective in failing to seek dismissal on this ground.

Defendant also mentions in passing that the prosecutor's decision to charge him with separate crimes arising from the same transaction amounted to a "piecemeal prosecution" that violated his right to due process. By failing to offer any meaningful analysis of this claim, he abandoned it on appeal. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

Finally, defendant argues that it was unacceptable for defense counsel to meet with him only twice. He complains that counsel failed to inform him of the trial strategy and failed to explain the plea offers made. Defendant informed the court before trial that counsel had only met with him twice. Counsel responded that he had spent a great deal of time preparing for this case, had discussed the defense theory with defendant "numerous times," and was "ready to go." Defendant has not identified how counsel's failure to meet with him in person more often or to better explain the defense theory deprived him of fair trial.

Similarly, defendant cannot establish that counsel's failure to better explain the plea offers deprived him of the benefit of those deals. At sentencing, defendant acknowledged that he had been offered two plea deals—one for 18 years and one for less than 13—and that he rejected both. He explained that he "did not want no murder case on my file because I feel deep down in my heart and my soul that I didn't contain or condone in that." Defendant rejected the pleas because he felt in his heart that he was not responsible for Rameau's death. He cannot now show that, but for counsel's inadequate advice, he would have accepted the offers. See *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Accordingly, defendant has not established that he is entitled to a new trial.

## IV. INSTRUCTIONAL ERRORS

Defendant finally argues that the trial court erred in several respects when it instructed the jury on the elements of felony murder on an aiding and abetting theory. After the court completed its instructions and released the jury for deliberation, it asked the parties if they had "any further additions or corrections or exceptions to the instructions." The prosecutor stated that she did not and defense counsel stated, "[n]ope, I don't either. Thank you, Judge." Defense counsel thereby approved the instructions. See *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011). An express approval constitutes waiver and, for that reason, there is no error to review. *Id.* at 504. Accordingly, we shall limit our review to defendant's subchallenge—that counsel's agreement with the instructions amounted to ineffective assistance. And we review de novo whether the trial court properly instructed the jury and whether the court properly interpreted the statutory elements of a claim. *Martin*, 271 Mich App at 337-338.

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *Kowalski*, 489 Mich at 501. We review the instructions as a whole to ensure that the elements of the charged offense have been submitted to the jury in a manner that is "neither erroneous or misleading." *Id.* (quotation marks and citation omitted).

Instructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Accordingly, an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights. [*Id.* at 501-502 (quotation marks and citations omitted).]

The trial court patterned its instruction after M Crim JI 16.4 but modified it to reflect the evidence that Gee was the person who shot Rameau as part of a common enterprise. It instructed the jury that the prosecutor had to prove each of the following elements:

First, that [Gee] caused the death of [Rameau]—that is, that [Rameau] died as a result of being shot by [Gee].

Second, the prosecutor must prove that [Gee] and [defendant] had one of three states of mind. Either an intention to kill, an intention to do great bodily harm to [Rameau] or knowingly created a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of his actions. However, [Gee] and [defendant] need not share the same state of mind.

Third, the prosecutor must prove that when [Gee] did the act that caused the death of Mr. Rameau, [Gee] or [defendant] were committing or attempting to commit or helping someone else commit the crime of larceny of any kind.

Defendant argues that the trial court erroneously failed to instruct the jury that it had to find that he caused Rameau's death before it could find him guilty of felony murder. As previously noted, however, the prosecution was not required to prove that defendant personally killed Rameau. "In cases where the felons are acting intentionally or recklessly in pursuit of a common plan, . . . liability may be established on agency principles." *People v Aaron*, 409 Mich 672, 731; 299 NW2d 304 (1980). That is, the prosecution need only prove that the defendant had the mens rea for murder and that the murder—even if caused by an accomplice—occurred during the defendant's commission or attempted commission of the enumerated underlying felony and was one of the hazards accompanying the defendant's commission of that offense. See *Gillis*, 474 Mich at 127; *Carines*, 460 Mich at 771 (stating that the defendant must deliberately participate in the underlying felony in which the victim was killed, must act with malice, and the death must not be totally unexpected or accidental); *Podolski*, 332 Mich at 515-516; *Smith*, 56 Mich App at 567. Consequently, the trial court's instruction—although awkwardly worded—adequately reflected the elements of felony murder and counsel's approval was not unreasonable.

Defendant also maintains that the court's instruction on the charge's third element was improper as it allowed the jury to find defendant guilty even if only Gee committed or attempted to commit the larceny. On its face, the instruction does appear to allow the jury to find defendant guilty of felony murder if Gee murdered Rameau during the commission of any larceny, even if it found that defendant did not commit, attempt to commit, or help commit a larceny. But when read as a whole and in context, the instructions adequately conveyed that the jury had to find that

-8-

defendant committed or attempted to commit a larceny or helped commit a larceny and that Gee killed Rameau during defendant's perpetration of those acts.

Although the court used the disjunctive "or" in the phrase "[Gee] or [defendant] were committing or attempting to commit or helping someone else commit the crime of larceny of any kind," the court also instructed the jury that it had to find that the men "were" committing, attempting, or helping. The term "were" refers to both subjects rather than just one, which suggests that the jury had to find that both men committed, attempted, or helped with the underlying larceny when Gee shot Rameau. Additionally, after instructing the jury on larceny and attempt, the court clarified that the "[d]efendant must have been either committing or helping someone else commit the crime of larceny. . . ." The court then instructed the jury on what it means to help another commit a crime. Finally, the court instructed the jury on the manner in which it should determine whether Rameau's death occurred during the perpetration of the larceny:

> [I]n determining the act causing death in this case occurred while the defendant was committing or helping someone else commit the crime of larceny, you should consider the length of time between the commission of the larceny and the murder, the distance between the scene of the larceny and the scene of the murder, whether there is a causal connection between the murder and the larceny, whether there is a continuity of action between [the] larceny and the murder, and whether the murder was committed during an attempt to escape.

This instruction, when considered with the others already noted, emphasized that Rameau's death had to have occurred during defendant's perpetration of the underlying offense. Accordingly, the instructions as a whole presented the correct elements and adequately protected defendant's rights.

Defendant also states that it was error to allow the jury to convict on the basis of an alleged larceny of the car or the speaker box taken from the car. He notes that unlawfully driving away a car does not amount to larceny and the theft of the speaker box occurred after Rameau had been shot. It is true that defendant pleaded guilty to unlawfully driving away a vehicle and that unlawfully driving away a vehicle is not a larceny. However, the prosecution may charge a person with larceny for stealing a vehicle. See MCL 750.356 (proscribing the "stealing" of "goods" or "chattels"). That defendant later abandoned Hotz's vehicle does not mean that he did not intend to permanently deprive Hotz of his property when he took it. See *People v Goodchild*, 68 Mich App 226, 233-234; 242 NW2d 465 (1976) (recognizing that the prosecutors can charge car thieves with unlawfully driving away a motor vehicle or larceny, and stating that the evidence supported the charge of felony murder premised on larceny even though the defendant abandoned the car after causing a fatal crash because it could be inferred from the evidence that the defendant took the car with the intent to steal).

The predicate felony could also be based on the theft of the items within Hotz's car. For purposes of felony murder, the murder must occur within the "unbroken chain of events surrounding the predicate felony." *Gillis*, 474 Mich at 125. As such, that defendant and Gee did not secure the subject items until after Gee shot Rameau did not prevent the consideration of that theft. Indeed, a reasonable jury could infer that defendant intended to steal the items inside the

from the moment that he drove the car away. See *People v Bradovich*, 305 Mich 329, 332-333; 9 NW2d 560 (1943) (stating that a larceny is complete the moment the defendant moves the property with the intent to steal and remains complete even though he or she abandons the property before leaving the store). These instructions, on the whole, adequately stated the elements of felony murder and protected defendant's rights. Therefore, defense counsel had no obligation to object to them.

Finally, defendant maintains that the court erred when it instructed the jury on aiding and abetting. The court instructed the jury that it could find defendant guilty of aiding and abetting Gee in the commission of felony murder as follows:

> Now, as I said, the Defendant is charged with the crime of first-degree felony murder, and this includes intentionally assisting someone else in committing the crime. That's called aiding and abetting. Anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime as what is called an aider and abett[o]r.

> To prove that charge, the prosecutor must prove beyond a reasonable doubt, first, that the alleged crime was actually committed either by the Defendant or someone else. And it doesn't matter whether anyone else has been convicted.

> Second, the prosecutor must prove that before or during the crime, the defendant did something to assist in the commission of the crime.

> And third, the prosecutor must prove that at the time of giving the assistance, the defendant either intended the commission of some crime or knew that the other person intended the commission of some crime, and that the alleged crime was either the same as the intended crime or a natural and probable consequence of the intended crime. Doesn't matter how much help, advice or encouragement the defendant gave. However, you must decide whether the defendant intended to help another commit the crime and whether his help, advice or encouragement actually did help, advise or encourage the other crime. Now— Or encourage the crime itself, rather.

Specifically, defendant faults the court for instructing the jury that it could find him guilty of felony murder if it found that he intended the commission of "some crime" or knew that the other person intended the commission of "some crime."

The trial court's instruction on the third element was not accurate. The court should have more clearly instructed the jury that defendant must have intended the commission of felony murder or had knowledge that Gee intended to commit felony murder. See *Carines*, 460 Mich at 768 (aiding and abetting requires proof that the defendant intended the commission of the *charged* crime). Nevertheless, any error was not so egregious that defense counsel's failure to object necessarily fell below an objective standard of reasonableness, and defendant has not shown that the imperfect instruction prejudiced his trial.

-10-

The court emphasized that defendant was charged with one crime: first-degree felony murder. It then instructed the jury that it could find defendant guilty of felony murder as a principal or by "intentionally assisting" someone. The court further instructed the jury that it had to find that defendant did something to assist in the commission of "the crime," which had to refer to a felony murder committed by Gee. Although the court referred to "some crime" when instructing the jury on the necessary intent, it was evident that the term "some crime" referred to felony murder. The court stated that defendant's intent to commit "some crime" or his knowledge that Gee intended to commit "some crime" must be "the same as the intended crime or a natural and probable consequence of the intended crime." The latter part of the instruction referred to Gee's intent and informed the jury that defendant had to have intended the commission of felony murder or knew that Gee intended to commit the crime of felony murder. The court used the same language when it instructed the jury on aiding and abetting the lesser included offense of second-degree murder. Accordingly, although the court should have been clearer about the necessary intent, on the whole any defect was minor and likely had no effect on the jury's verdict. See *Carines*, 460 Mich at 772. Accordingly, we discern no error warranting a new trial.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron

-11-